Margie GARZA, Appellant.

v.

STATE of Texas, Appellee.

No. 01–07–00404–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 31, 2008.

Elizabeth L. DeRieux, Brown McCarroll, LLP, Longview, TX, Peter Adams, Law Office of Peter Adams, Houston, TX, for Appellant.

Alan Curry, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, HANKS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

A jury found appellant, Margie Garza, guilty of third-offense felony theft, for which the trial court assessed a term of 22 months in state jail. *See* TEX. PEN.CODE ANN. § 31.03(a), (e)(4)(D) (Vernon Supp. 2007). In a single point of error, appellant contends that the trial court violated her due process rights by its conduct toward, and remarks to, the defense's only witness.

We affirm.

## Background

D.R. Cano, Jr., a loss prevention officer in a Marshall's department store, observed appellant and her 14–year–old daughter, C.M., working in tandem concealing mer-

chandise in a diaper bag and a purse. After they left the store without paying for these items, Cano stopped appellant and her daughter. Cano discovered store merchandise in the pair's possession.

Appellant was arrested and charged with third-offense felony theft. The indictment alleged that appellant had stolen "one carrot peeler and four pair of panties."

The only defense witness at trial was appellant's minor daughter, C.M. Before C.M. took the stand, the trial court conducted an inquiry outside the presence of the jury to determine whether charges were pending against C.M. in the juvenile justice system arising from her participation in the theft from Marshall's. It became apparent during the colloquy between the trial court, counsel, and C.M. that neither the prosecutor, defense counsel, nor C.M., knew for certain whether charges were pending against C.M. in the juvenile system. For this reason, the trial court recessed the trial.

The following morning, the trial court stated on the record that it had been informed that juvenile charges were pending against C.M. related to the theft from Marshall's. The trial court stated it had learned that C.M. had never appeared in juvenile court on the charges because the juvenile authorities had been unable to locate her. The trial court remarked that it had also learned that C.M.'s trial on the juvenile charges was scheduled to take place four months later. The trial court noted that C.M. did not have counsel in the juvenile matter because she had never made an appearance in juvenile court. At that point, the trial court appointed counsel "to speak with [C.M.] in private so that she can make a decision as to whether or not she's going to testify, since her case is currently pending in the juvenile system."

The trial court acknowledged,

[T]his Court is well aware of the case law that indicates that the Court is not to advise a witness who's about to take responsibility for committing the offense, the Court should not appoint counsel, that the folks should make that decision on their own because there's a chilling effect to the Court doing that.

But in this case, because this witness is a juvenile, the Court has made the decision that I'm going to go out on a limb, right or wrong, and appoint somebody to talk to her before she takes the stand and takes any kind of responsibility. And that—so then she can make a decision based on the advice of her counsel, not her mother or her mother's counsel.

The trial court also ordered appellant not to have any contact with her daughter until C.M. had an opportunity to speak with appointed counsel. Defense counsel objected, but stated, "I understand the Court's decision." The trial court then explained to C.M. that appointed counsel would not represent her in the juvenile matter but would advise her of her rights with regard to testifying in the instant matter. The trial court then recessed the proceeding.

After the break, the trial court reprimanded appellant for speaking with C.M. during the recess in contravention of the court's earlier order. For violating the order, the trial court revoked appellant's bond, noting that appellant understood that she should not have contact with appellant and that appellant knew that C.M. was "under the Rule."

The defense then called C.M. as a witness. C.M. acknowledged that she had visited with her appointed attorney and that he had explained to her the ramifications of her testimony. C.M. then proceeded to testify that she had stolen a pair

of pants and a wallet from Marshall's on the date in question. C.M. claimed that her mother did not aid her in the theft. C.M. further testified that appellant did not steal any items and claimed that neither she nor her mother took the four pair of panties or the carrot peeler identified in the indictment.

C.M. responded affirmatively when asked on cross-examination whether she was "accepting all the responsibility for the theft that occurred at Marshall's." She further acknowledge that, despite her conversation with her attorney, she agreed to testify and to tell the jury that she was the one responsible for the theft.

## Due Process Rights

■■■■ In her sole point of error, appellant contends that "the trial court violated her right to due process of law under the Fourteenth Amendment by making statements to the sole defense witness resulting in and calculated to dissuade the witness from clearing [appellant] of the accused offense."[1] *See* U.S. CONST. amend. XIV. Appellant claims that 15–year–old C.M. was "frightened and upset, and vulnerable to coercion by the Court or other authorities." Appellant continues,

> Nevertheless, the Court (1) questioned the witness at length about the potential charges pending against her; (2) stopped the trial to conduct its own investigation when it was not satisfied with [C.M.'s] answers; (3) appointed independent counsel to consult with [C.M.] over defendant's objections; and (4) revoked [appellant's] bond because [C.M.] talked to her mother in open court in the presence of her lawyer, citing "the Rule,"[2] which provides no authority for the revocation.

■■■ In *Safari v. State*, we recognized that there are only two instances in which a trial court might legitimately believe, in the interest of fairness, that it is necessary to warn a witness of the perils of testifying: (1) when a witness is unwittingly incriminating himself and (2) when a witness is likely to commit perjury. 961 S.W.2d 437, 443 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd, untimely filed). We acknowledged that the trial court has no duty to make such warnings and that "[t]he better practice is for a trial court not to warn a witness of the inherent risks in testifying, because such warnings may infringe upon an accused's right to due process." *Id.* at 444. We continued, "[T]he search for truth is unreasonably inhibited by a witness who would have testified to information relevant to the court proceedings but for the trial court's unnecessary admonishments." *Id.*

We determined that, when reviewing whether the warnings of a trial court altered a witness's testimony, we should consider:

> the circumstances under which a perjury or other similar admonition was made to a witness, the tenor of the warning given, and its likely effect on the witness's intended testimony. If the admonition likely precluded a witness from making a free voluntary choice whether or not to

---

**1.** Contrary to the State's assertion, we do not agree that appellant's failure to specifically object on the ground now raised on appeal necessarily waived her appellate point. *See Webb v. Texas*, 409 U.S. 95, 97, 93 S.Ct. 351, 353, 34 L.Ed.2d 330 (1972) (concluding that failure to interrupt trial judge in middle of his remarks warning defense witness of potential perjury charges is not basis for waiver).

**2.** We assume the reference to "the Rule" refers to Texas Rule of Evidence 614. *See* TEX.R. EVID. 614 (providing, in relevant part, "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion.").

testify, or changed the witness's testimony to coincide with the judge's or prosecutor's view of the facts, ... then a defendant's right to due process may have been violated.

*Id.* (quoting *Davis v. State,* 831 S.W.2d 426, 438 (Tex.App.-Austin 1992, pet. ref'd) (internal quotes and citations omitted)). Here, when placed in context, the record does not support appellant's contention that the trial court's remarks and cited conduct were intended to, nor had the effect of, coercing C.M. to alter her testimony. Rather, the record shows that the trial court engaged in the conduct to protect the rights of an unrepresented minor, who was subject to pending juvenile charges, and to insure that C.M. was not pressured or manipulated by her mother to take the blame for the offense.

Nor was the tenor of the trial court's questions and remarks directed at C.M. overbearing or coercive. Rather, the trial court's tenor was inquisitive and cautious with the apparent focus being to insure that C.M. understood the incriminating effect of her testimony and to make certain that C.M.'s waiver of her right against self-incrimination was made intelligently, voluntarily, and independent of her mother's influence. *See Cathey v. State,* 992 S.W.2d 460, 465 (Tex.Crim.App.1999) (commending trial court's action of insuring that witness, whose attorney was not present, was intelligently and voluntarily waiving his right against self-incrimination when he testified at trial of his co-defendant).

We note that, to support her point, appellant cites *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). In *Webb,* the trial court sua sponte warned the defense's only witness, a prison inmate, "If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury." *Id.* at 95, 93 S.Ct. at 352. The trial court assured the witness that if he lied, as expected, he would be prosecuted and probably convicted for perjury, the sentence for the perjury conviction would be added to his present sentence, and the perjury conviction would impair his chance of parole. *Id.* at 96, 93 S.Ct. at 352. After this admonishment, the witness declined to testify. *Id.* at 96, 93 S.Ct. at 353.

The Supreme Court held that such threatening remarks had effectively driven the witness off the stand and deprived the petitioner of due process. 409 U.S. at 98, 93 S.Ct. at 353. The *Webb* court reasoned that "in light of the great disparity between the posture of the presiding judge and that of a witness in these circumstances, the unnecessarily strong terms used by the judge could well have exerted such duress on the witness's mind as to preclude him from making a free and voluntary choice whether or not to testify." *Id.* at 96, 93 S.Ct. at 353.

The facts of this case are not analogous to those of *Webb.* Here, the facts reveal neither "unnecessarily strong terms" nor "exertion of such duress" as to "preclude the witness from making a free and voluntary choice whether or not to testify." *Id.* As discussed, the record instead reveals that the trial court was cautiously insuring that C.M., a minor without legal counsel facing juvenile charges, was making an informed and voluntary decision to testify. *See Cathey,* 992 S.W.2d at 465. The trial court itself did not advise C.M. of the effects of her testimony but, instead, left that to appointed counsel.

Moreover, C.M. did not decline to testify as a result of the trial court's actions, as did the witness in *Webb.* To the contrary, C.M. implicitly waived her right against self-incrimination and testified in her mother's defense. Despite appointed

counsel's presumed advice, C.M.'s testimony exonerated her mother of the charged offense and inculpated herself.

Though not clear, appellant appears to suggest that the trial court's conduct in some manner shaded or inhibited C.M.'s testimony. Appellant does not refer us to any portion of the record to support her contention that C.M.'s testimony was altered in some manner by the trial court's conduct. To the contrary, on redirect examination, C.M. confirmed that her testimony was the same as the statement that she had given police on the day of her mother's arrest in this case. *See Johnson v. State,* 208 S.W.3d 478, 503 (Tex.App.-Austin 2006, pet. ref'd) (holding that trial court's perjury admonishment to defense witness did not violate defendant's due process rights because it had no effect on trial testimony; record revealed that testimony was consistent with previous recorded statement given to defense counsel).

Given the context and circumstances of the trial court's conduct, the tenor of the trial court's remarks, and the apparent lack of effect on C.M.'s testimony, we hold that the trial court's cited actions did not violate appellant's due process rights.

Accordingly, we overrule appellant's sole point of error.

### Conclusion

We affirm the judgment of the trial court.