J-A08035-16

2016 PA Super 120

| | | |
|---|---|---|
| IN RE:  N.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  N.M. | : | No. 950 EDA 2015 |

Appeal from the Dispositional Order March 17, 2015
in the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0003317-2014

BEFORE:  BOWES, OLSON, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:                    **FILED JUNE 14, 2016**

N.M. (Appellant) appeals from the dispositional order entered March

17, 2015, after she was adjudicated delinquent of retail theft.  Upon review,

we vacate the order and remand for further proceedings consistent with this

opinion.

The juvenile court summarized the testimony offered at the

adjudicatory hearing in this matter as follows.

> Stephen McCartney was the first witness to testify.   Mr.
> McCartney testified that on December 21, 2014, he was working
> as a plain clothes loss prevention agent at Nordstrom Rack store
> located at 17th and Chestnut Streets, Philadelphia, Pa.  On that
> date, Mr. McCartney said that he observed [Appellant], along
> with another young woman, J.B., enter the store at
> approximately 3:45 PM.  Mr. McCartney identified [Appellant] at
> the bar of the court.  Mr. McCartney explained that he began
> surveillance of the two young women because they were
> carrying seemingly empty bags and looking around suspiciously.
> Mr. McCartney testified that he maintained continuous
> observation of [Appellant] and [J.B.] once they were in the
> women's shoe department on the third floor of the store.   He
> explained that [J.B.] selected a pair of blue Ugg boots valued at
> $159.97[] and, approximately five (5) minutes later, they
> headed for the men's shoe department where [J.B.] sat down
> and placed one boot into each of the two bags that were carried

* Retired Senior Judge assigned to the Superior Court.

into the store. Mr. McCartney said he observed [Appellant] hand a black handbag to [J.B.] so a boot could be concealed in it. Mr. McCartney testified that while [Appellant] was carrying a black handbag and [J.B.] carried an empty H & M shopping bag, the women switched bags once the boots were placed in them. Mr. McCartney testified that he was approximately 20 to 25 feet away when he made these observations and he had a complete view of the transaction. Mr. McCartney watched the two women proceed down the elevator to the first floor where [Appellant] left the store through the Chestnut Street exit while [J.B.] left the store through the 17th Street exit passing all of the points of sale without stopping to pay for the merchandise. Mr. McCartney testified that the police were called and both [Appellant and J.B.] were stopped and arrested. The merchandise was returned to the store.

The only witness to testify for the defense was [Appellant]. She testified that she was at the Nordstrom Rack store on December 21, 2014 with her friend, [J.B.]. [Appellant] testified that her friend was shopping for boots and she sat down in the men's section to try them on. [Appellant] indicated that [J.B.]'s books were in her black handbag, and it was heavy, so they exchanged bags. [Appellant] said that it was crowded on the first floor and she walked out the Chestnut Street exit when she looked back and realized that [J.B.] was[ not] behind her. She testified that she started to call [J.B.'s] cell phone while walking back to the store when security guards came towards her asking for the boot and grabbing the H & M bag. She was then taken back to the detention room and the bag was emptied out. [Appellant] testified that she did not know until that time that [J.B.] put the boot in the bag. [Appellant] further testified that she did[ not] see [J.B.] put the boots in the separate bags and she did[ not] realize that she carried a boot out of the store in the H & M bag.

Juvenile Court Opinion, 7/7/2015, at 3-5 (citations omitted). Of particular import for purposes of this appeal, Appellant sought to call J.B. as a defense witness at the adjudicatory hearing, but the juvenile court prevented her from doing so out of concern for protecting J.B.'s Fifth Amendment right against self-incrimination. N.T., 3/17/2015, at 17-20.

Following the adjudicatory hearing, the juvenile court adjudicated Appellant delinquent for retail theft and placed Appellant on probation. This appeal followed.

On appeal, Appellant presents the following issues for our consideration:

1. Was not [A]ppellant … denied her constitutional rights to compulsory process, a fair trial and to present a defense when the juvenile court would not permit her teenage defense witness to provide completely exculpatory testimony by erroneously ruling that the teenager could not waive her privilege against self-incrimination?

2. Did not the juvenile court err and abuse its discretion in adjudicating [A]ppellant delinquent without inquiring into whether, or making a finding that, [A]ppellant was in need of treatment, rehabilitation or supervision?

Appellant's Brief at 3.

"We will disturb a juvenile court's disposition only upon a showing of a manifest abuse of discretion." *In re C.A.G.*, 89 A.3d 704, 709 (Pa. Super. 2014). However, where an appeal presents a question of law, our standard of review is *de novo* and our scope of review is plenary. *In re R.R.*, 57 A.3d 134, 139 (Pa. Super. 2012).

In her first issue, Appellant contends that the juvenile court improperly prevented J.B. from waiving her privilege against self-incrimination and testifying to corroborate Appellant's defense that Appellant did not know that J.B. had put the Ugg boot in Appellant's bag. Appellant's Brief at 11. Appellant argues that the juvenile court erred in so doing because, *inter alia*,

J.B. was represented by counsel, fully advised of her right against self-incrimination, and wished to testify on Appellant's behalf. *Id.* Appellant claims that the juvenile court's decision violated her constitutional rights to have compulsory process for obtaining witnesses in her favor, to a fair and just trial, and to present a defense. *Id.* at 11, 15-17.

The Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution provide that, in all criminal prosecutions, an accused has a right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI; Pa. Const. art. 1, § 9. This right attaches to juvenile proceedings pursuant to section 6338 of the Juvenile Act, which provides that "[a] party is entitled to the opportunity to introduce evidence and otherwise be heard in his own behalf and to cross-examine witnesses." 42 Pa.C.S. § 6338(a).

Notwithstanding the above, the right to have compulsory process for obtaining witnesses in one's favor "is qualified to the extent of existing testimonial privileges of witnesses, such as the privilege against self-incrimination. The right to compulsory process guarantees a defendant the process to obtain witnesses in his favor but does not grant him the right to secure the attendance of any and all witnesses." *Commonwealth v. Lyons*, 833 A.2d 245, 254 (Pa. Super. 2003). A juvenile's Fifth Amendment right against self-incrimination is also provided for in section 6338 of the

Juvenile Act. *See* 42 Pa.C.S. § 6338(b) ("A child charged with a delinquent act need not be a witness against or otherwise incriminate himself.").

Keeping these principles in mind, we observe that the issue in this case is unusual in that it does not involve a challenge to an assertion of the privilege by a juvenile, but instead a challenge to a court's prohibition against a juvenile's waiver of that privilege:

> [Appellant's Counsel]: … Your Honor, at this time I would call [J.B.] to the stand.
>
> THE COURT: How do you expect to do this?
>
> [Appellant's Counsel]: Your Honor, I believe [J.B.'s counsel] will colloquy [J.B.] on the stand about testifying --
>
> THE COURT: How old is [J.B.]?
>
> [Appellant's Counsel]: [J.B.] was born in '98, so she is 16 years old, Your Honor.
>
> THE COURT: She's not testifying. She is the coconspirator on the case where the Commonwealth just tried to amend for conspiracy. I would not allow that, but only because they didn't do it in a timely fashion.
>
> What is the benefit to this juvenile to get up on the stand and tell a story?
>
> [Appellant's Counsel]: Your Honor, she's going to tell the truth that there was --
>
> THE COURT: It's not about the truth, it's about whether she has 5th Amendment rights.
>
> [Appellant's Counsel]: She does have 5th Amendment rights.
>
> THE COURT: Very good, she does. And that's what [J.B.'s counsel] is here for, to be 5th Amendment counsel.

- 5 -

[Appellant's Counsel]: I was not involved in the conversation about the 5th Amendment rights, but I understand from [J.B.'s counsel] that he explained what her rights are, the consequences of testifying here today. She said she still wants to testify, which is why we put the colloquy on the record.

THE COURT: Sure, she might want to buy a car too but can she? No. You know why? Because she's not 18 yet. She's a juvenile. So just because she wants to testify doesn't mean she gets to testify. And it's pretty clear to the [c]ourt that she has some serious 5th Amendment issues.

[Appellant's Counsel]: Understood, Your Honor.

THE COURT: Was she ever arrested?

[Appellant's Counsel]: She was arrested, Your Honor.

THE COURT: And is that still coming up?

[J.B.'s Counsel]: I can tell the [c]ourt that she was -- her case was diverted. She got GAP, and she is not quite completed that program.

THE COURT: Okay. So then she has double exposure.

[J.B.'s Counsel]: I've advised her, and she understands her exposure.

THE COURT: Have you advised her not to testify?

[J.B.'s Counsel]: I have advised her of all of her options, Your Honor. If it was my decision, I would tell her not to, but she's indicated that she wants to.

THE COURT: I'm not saying that. What difference does it make what she wants to do? The idea is that I appointed you as her counsel to advise her legally what she should do. It's pretty clear to me that legally she shouldn't testify, so I'm not going to allow her to testify.

N.T., 3/17/2015, at 17-20.

- 6 -

This Court and the Pennsylvania Supreme Court have recognized that the right against self-incrimination is personal and thus cannot be invoked by another. *See Commonwealth v. Hall*, 701 A.2d 190, 198 (Pa. 1997) ("Since one's Sixth Amendment and Fifth Amendment rights are personal, they cannot be invoked by another party."); *Hull v. Hannahstown Mutual Ins. Co.*, 678 A.2d 815, (Pa. Super. 1996) (explaining that "[o]ur Supreme Court has held that fifth amendment rights are personal to the individual and may not be asserted by another," and concluding that the trial court improperly invoked the privilege on behalf of a witness). Nevertheless, we are well aware of the concern regarding "the innate disadvantages associated with the immaturity of most youth" and the need to balance those considerations against the interests of society and justice. *Commonwealth v. Williams*, 475 A.2d 1283, 1287 (Pa. 1984). In *Williams*, which addressed a juvenile's waiver of his *Miranda*[1] rights in the context of providing a confession during police interrogation, our Supreme Court held:

> The requirements of due process are satisfied, and the protection against the use of involuntary confessions which law and reason demand is met by application of the totality of circumstances analysis to all questions involving the waiver of rights and the voluntariness of confessions made by juveniles. All of the attending facts and circumstances must be considered and weighed in determining whether a juvenile's confession was knowingly and freely given. Among those factors are the

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

> juvenile's youth, experience, comprehension, and the presence or absence of an interested adult.[2]

*Id.* at 1288. Other factors to consider in this context also include "(1) the duration and means of an interrogation; (2) the defendant's physical and psychological state; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) any and all other factors that could drain a person's ability to withstand suggestion and coercion." *In re V.C.*, 66 A.3d 341, 351 (Pa. Super. 2013) (internal quotation marks omitted) (providing further that waiver must be made voluntarily, knowingly, and intelligently).

Both Appellant and the Commonwealth draw a connection between the case *sub judice* and those concerning a juvenile's waiver of his or her *Miranda* rights in the context of police interrogations, as there appears to be no binding precedent addressing the specific issue of whether a court can preclude a juvenile witness from waiving his or her Fifth Amendment rights to provide testimony on behalf of a defendant at trial. We observe that there is persuasive authority from other jurisdictions that supports application of a totality-of-the-circumstances approach herein. For example,

---

[2] We note that "the 'interested adult' rule …. provided that no person under the age of eighteen years could waive his right to remain silent and his right to the assistance of counsel without being provided an opportunity to consult with an interested adult, who is informed of the juvenile's rights and is interested in the welfare of the juvenile." *Williams*, 475 A.2d at 1286-87. As indicated above, the presence or absence of an interested adult is no longer a *per se* requirement, but one factor in determining the voluntariness of a juvenile's waiver of his or her *Miranda* rights. *Id.* at 1288; *In re V.C.*, 66 A.3d 341, 351 (Pa. Super. 2013).

in **Garza v. Texas**, 248 S.W.3d 742 (Tex. App. 2008), a mother was arrested for stealing merchandise from a department store. **Id.** at 742-43. Her daughter, C.M., was the only defense witness at trial. **Id.** at 743. Prior to C.M.'s taking the stand, the trial court learned upon inquiry that juvenile charges were pending against C.M. as a result of the same incident and thus appointed counsel to advise C.M. of her rights with regard to testifying at her mother's trial. **Id.** C.M. eventually was called as a witness, at which time she acknowledged that she had visited with her appointed attorney, that he had explained to her the ramifications of her testimony, and that she agreed to testify despite her conversation with her attorney. **Id.** at 743-44. Through her testimony, C.M. accepted all responsibility for the theft which had occurred. **Id.**

In rejecting the mother's claim on appeal,[3] the Texas Court of Appeals looked favorably upon the manner in which the trial court handled C.M.'s testifying:

> Here, when placed in context, the record does not support appellant's contention that the trial court's remarks and cited conduct were intended to, nor had the effect of, coercing C.M. to alter her testimony. Rather, the record shows that the trial court engaged in the conduct to protect the rights of an unrepresented minor, who was subject to pending juvenile charges, and to insure that C.M. was not pressured or manipulated by her mother to take the blame for the offense.

---

[3] The mother argued that "the trial court violated her right to due process of law under the Fourteenth Amendment by making statements to the sole defense witness [and engaging in conduct] resulting in and calculated to dissuade the witness from clearing [the mother] of the accused offense." **Garza**, 248 S.W.3d at 744.

- 9 -

Nor was the tenor of the trial court's questions and remarks directed at C.M. overbearing or coercive. Rather, the trial court's tenor was inquisitive and cautious with the apparent focus being to insure that C.M. understood the incriminating effect of her testimony and to make certain that C.M.'s waiver of her right against self-incrimination was made intelligently, voluntarily, and independent of her mother's influence.

*Id.* at 745-46 (noting further that "C.M. did not decline to testify as a result of the trial courts actions" and that "C.M. implicitly waived her right against self-incrimination and testified in her mother's defense[ d]espite appointed counsel's presumed advice"). Thus, looking at the various factors present in the case (*i.e.*, that C.M. had charges pending from the same incident, had appointed counsel, presumably was advised of her right against self-incrimination, and had not been subject to coercion),[4] the Texas Court of Appeals found no error.

In **State v. Melina**, 210 N.W.2d 855 (Minn. 1973), the defendant was convicted of receiving or concealing stolen property with respect to a bicycle he had been found riding. *Id.* at 855. At trial, the "defendant testified that he got [the] bicycle from Marvin Bolles, but not to keep, only to use. [The d]efendent testified that he did not know where Marvin got the bicycle." *Id.* The defendant called Marvin Bolles and another individual, who were two of the defendant's juvenile companions at the time of the arrest, as defense

---

[4] The Court also observed that the mother "appear[ed] to suggest that the trial court's conduct in some manner shaded or inhibited C.M.'s testimony," but rejected that contention because it was not supported by the record. **Garza**, 248 S.W.3d at 746.

- 10 -

witnesses, but the "trial court refused to permit either to waive his privilege against self-incrimination" on the basis that they were juveniles and incapable of doing so. *Id.* at 855-56.

On appeal, the Supreme Court of Minnesota concluded that, "[w]hile in the instant case the court's action reflected a natural concern for the constitutional rights of the juveniles called as defense witnesses," the trial court erred in preventing the juvenile defense witnesses from testifying based solely on the fact that they were juveniles. *Id.* at 856. The Court further explained that

> [w]hen it is clear to a trial court that a juvenile by testifying will incriminate himself, it becomes incumbent upon the court to see that independent counsel, a parent, or other competent adult adviser is obtained to advise the juvenile concerning his constitutional privilege against self-incrimination. The court can interrogate and satisfy itself that the right was intelligently waived, if such be the case. … If, after proper advice by independent counsel, an adult adviser, or parent, the juvenile wishes to testify, the court should allow his testimony.

*Id.* (citations omitted).

Upon review, we likewise conclude that a juvenile may waive his or her right against self-incrimination in the context of providing witness testimony if the waiver is knowing, intelligent, and voluntary. In determining whether such waiver is proper, we believe that a totality-of-the-circumstances test strikes the proper balance between accounting for the disadvantages associated with one's youth and ensuring the interests of justice are served. We therefore adopt that test today and, in so doing, hold that the following

factors are among those to be considered when implementing this approach: "the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult," **Williams**, 475 A.2d at 1288; the presence or absence of appointed counsel; the advice provided by counsel; and whether the juvenile was facing criminal charges arising from the same incident at issue. Moreover, any evidence of coercion or improper suggestion on behalf of the defendant, other witnesses, the attorneys involved, and the juvenile court is also to be considered. **See In re V.C.**, 66 A.3d at 351 (stating that "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception"). Finally, the juvenile court shall conduct an on-the-record colloquy to ensure that the juvenile is fully aware of both "the nature of the right being abandoned and the consequences of the decision to abandon it." **Id.**

Turning to the circumstances of this case, the juvenile court offered the following reasoning for its decision to preclude J.B. from waiving her privilege against self-incrimination:

> In order to protect the Fifth Amendment rights of the witness[], counsel was appointed to represent her. Further, the purpose of the in[-]court colloquy was to determine whether the witness understood that she could remain silent pursuant to her Fifth Amendment right against self-incrimination. The witness's waiver of her right to remain silent was significant to the [c]ourt because the witness was also facing charges arising from the facts of the instant case. It was clear to the [c]ourt that counsel advised [J.B.] not to testify. Furthermore, [J.B.'s] parents were not present in court and did not participate in the discussion with

counsel about their child's waiver of her Fifth Amendment rights. Under [s]ection 6338 of the Juvenile Act, this [c]ourt refused to permit her testimony.

Juvenile Court Opinion, 7/7/2015, at 6-7. Thus, the juvenile court considered many, but not all, of the factors outlined above in precluding J.B. from waiving her Fifth Amendment rights.

Nevertheless, we conclude that a remand is proper in this case because, notwithstanding the juvenile court's representation that an on-the-record colloquy of J.B. occurred, the court did not cite—and the record does not reveal—that such a colloquy was in fact conducted. In the absence of this colloquy, we have little basis upon which to confirm that J.B. was fully aware of both the nature of her Fifth Amendment right against self-incrimination and the consequences of waiving that right. Moreover, we have no indication of the manner in which her youth, experience, and comprehension impacted her decision, or whether there was any indication that J.B. was coerced or otherwise influenced improperly when making her decision. Given these circumstances (*i.e.*, no on-the-record-colloquy), we hold that the juvenile court's refusal to permit J.B. to waive her Fifth Amendment right was in error.[5] Thus, Appellant is entitled to a new

---

[5] The Commonwealth argues that Appellant did not preserve her claim because she failed to make a sufficient offer of proof as to the substance of J.B.'s testimony. Commonwealth's Brief at 10-12. We agree with Appellant that, as demonstrated by the record, she was, for all intents and purposes, precluded from making an adequate offer of proof by the juvenile court. *See Romeo v. Manuel*, 703 A.2d 530, 534 n.2 (Pa. Super. 1997) (addressing an issue "as properly before this Court" where there was no

disposition wherein the juvenile court shall perform a proper colloquy with respect to J.B.'s waiver of her Fifth Amendment rights and give full consideration to all of the factors outlined above.

Given our disposition above, we need not render a decision on Appellant's second issue. However, in the event that the juvenile court finds on remand that Appellant committed retail theft, we remind the court of its responsibilities pursuant to Section 6341(b) of the Juvenile Act:

> **(b) Finding of delinquency.--**If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record and shall specify the particular offenses, including the grading and counts thereof which the child is found to have committed. **The court shall then proceed immediately or at a postponed hearing, which shall occur not later than 20 days after such finding if the child is in detention or not more than 60 days after such finding if the child is not in detention, to hear evidence as to whether the child is in need of treatment, supervision or rehabilitation and to make and file its findings thereon**. … In the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation. If the court finds that the child is not in need of treatment, supervision or rehabilitation it shall dismiss the proceeding and discharge the child from any detention or other restriction theretofore ordered.

---

offer of proof on the record but the trial judge had prevented the appellant from approaching sidebar regarding the evidentiary ruling, explaining that "[t]his Court will not hold the lack of an offer of proof against [the] appellant because of the trial court's refusal to accept the offer of proof"). We further agree that the substance of J.B.'s testimony was apparent from the context. *See* Pa.R.E. 103(a)(2) ("A party may claim error in a ruling to … exclude evidence only[] if … a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.").

42 Pa.C.S. § 6341(b) (emphasis added). ***See Commonwealth v. M.W.***, 39 A.3d 958, 962 (Pa. 2012) (holding that "a juvenile court must determine (1) that the juvenile committed the delinquent acts alleged; ***and*** (2) that the juvenile is in need of treatment, supervision, or rehabilitation, before it may enter an adjudication of delinquency") (emphasis in original).

Based on the foregoing, we conclude that the juvenile court erred in preventing J.B. from waiving her Fifth Amendment right against self-incrimination without conducting a proper on-the-record colloquy of J.B. and without full consideration of all of the factors set forth above. Accordingly, we vacate the March 17, 2015 dispositional order and remand for a new proceeding consistent with this opinion.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2016