J-E02006-17

2018 PA Super 124

| IN THE INTEREST OF: N.B., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA | No. 527 WDA 2016 |

Appeal from the Order March 11, 2016
In the Court of Common Pleas of McKean County
Criminal Division at No(s): CP-42-JV-0000063-2015

BEFORE: GANTMAN, P.J., BENDER, P.J.E., BOWES, J., SHOGAN, J.,
LAZARUS, J., OLSON, J., OTT, J., STABILE, J., and DUBOW, J.

OPINION BY DUBOW, J.:                                    FILED MAY 10, 2018

The Commonwealth appeals from the March 11, 2016 Order entered by

the McKean County Court of Common Pleas granting the Motion to Suppress

filed on behalf of juvenile N.B. ("Appellee").  After careful review, we affirm.

Appellee's Mother ("Mother") believed Appellee and his twin brother,

D.B., had engaged in sexual misconduct involving a 9-year-old girl who lived

in a neighboring apartment.  On April 29, 2015, after confronting Appellee and

D.B. about her suspicions, Mother reported the allegations to Appellee's school

district because she was concerned about Appellee's inappropriate sexual

behavior.  Lieutenant Steve Caskey of the Bradford Police Department

contacted Mother and asked her to bring Appellee and D.B. into the station

for an interview.

Mother complied and voluntarily brought 14-year-old Appellee and D.B. to the Bradford Police Department to be interviewed about the sexual misconduct allegations. Upon arriving at the police station, Lieutenant Caskey brought Mother, Appellee, and D.B., into an interview room and turned on recording equipment with Mother's permission.[1] Lieutenant Caskey read Miranda[2] warnings and explained that, while Mother could be present for the interviews, he preferred to interview the boys individually and alone. Mother agreed and Lieutenant Caskey first interviewed Appellee alone.[3]

Appellee fully complied with his Mother's instructions, confessed to numerous sex acts involving the nine-year-old girl, answered all of Lieutenant Caskey's questions, and agreed to speak with Lieutenant Caskey again if necessary. Lieutenant Caskey then questioned D.B. about the allegations, and D.B. similarly complied with his Mother's instructions, confessed to

_____

[1] The video recording showed that Lieutenant Caskey's interview with Appellee, Appellee's Mother, and D.B lasted a total of 27 minutes. Suppression Court Opinion, dated 3/14/16, at 3. Lieutenant Caskey's individual questioning of Appellee lasted approximately ten minutes. Id.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

[3] When exiting the interview room to permit individual questioning of Appellee, the video recording shows that Mother put her hand on Appellee's head and instructed Appellee to "[b]e brave and you tell the truth, ok?"

numerous sex acts involving the nine-year-old girl, and answered each of Lieutenant Caskey's questions.[4]

On October 16, 2015, the Commonwealth filed a written allegation of delinquency based on Appellee's confession.[5] On December 1, 2015, Appellee filed a Motion to Suppress his confession.

On February 17, 2016, the suppression court conducted a hearing at which Mother, Lieutenant Caskey, and Appellee testified.

Mother described Appellee's developmental delays and constant difficulties in school. She described the circumstances of her report to police and how she brought Appellee to the police station to confess his crimes. She stated that she repeatedly told Lieutenant Caskey that she wanted to get Appellee the help and treatment he needed, in addition to the consequences for his actions. Mother explained that she did not believe Appellee knew that he could refuse to answer Lieutenant Caskey's questions or leave the police station.

_____

[4] Mother then spoke with Lieutenant Caskey before leaving. Mother expressed her request for guidance, her wish to inform the victim's parents, and her desire for "consequences" and "help." When Mother asked what usually happens "with things like this[,]" Lieutenant Caskey replied that "a lot of the times its probation. . . in school probation. . . . Obviously they'll get counseling, uh, and that's generally the most part of it."

[5] The Commonwealth also filed a written allegation of delinquency against D.B. based on his confession. D.B.'s case proceeded separately from Appellee's case.

Appellee testified that he was in 7th grade in 2015, that he was "behind" in school, and that he was older than most of his classmates. N.T., 2/17/16, at 48, 68. Appellee described the problems he was having in school, including difficulty paying attention, learning, and understanding his teacher's instructions. Id. at 49. Appellee stated that he was struggling with his math and science classes and not passing.[6] Id. at 72. Appellee also stated that he was receiving mental health treatment in school. Id. at 48. Appellee also testified that, in 2015, he did not know anything about the legal system. Id. at 49.

Appellee explained that he did not understand that he could refuse to answer Lieutenant Caskey's questions or leave the police station. Appellee claimed that he believed he had no choice but to comply with his Mother's instructions and confess his crimes.

Lieutenant Caskey testified about the circumstances of Appellee's confession, including the oral waiver of rights by Appellee, his twin brother, and his Mother. Lieutenant Caskey explained that he recorded the interview with permission, and the Commonwealth introduced the recorded interview.

Lieutenant Caskey "kept a rational, calm demeanor and was forthright with Mother, [Appellee], and [Appellee's] twin brother." Suppression Court Opinion, dated 3/14/16, at 5. Lieutenant Caskey did not yell at or threaten

_____

[6] Appellee's Mother testified that Appellee had an Individualized Education Plan, though she could not remember the exact dates. Id. at 70.

- 4 -

Appellee, and Lieutenant Caskey did not restrain Appellee in any way. Id. Although the door was closed during questioning, it was not locked. Id. at 2. Lieutenant Caskey remained seated during questioning, and Appellee sat in a chair on the other side of Lieutenant Caskey's office desk next to the door. Id. at 2.

At the conclusion of the hearing, the suppression court took the matter under advisement.

On March 14, 2016, the suppression court filed an Order granting Appellee's Motion to Suppress. In its accompanying Opinion, the trial court set forth its findings of fact and conclusions of law, before concluding that, based on the totality of the circumstances, Appellee had not waived his Miranda rights knowingly, voluntarily, and intelligently. Suppression Court Opinion, dated 3/14/16, at 4-5.

On April 8, 2016, the Commonwealth filed a timely appeal.[7] Both the Commonwealth and the suppression court complied with Pa.R.A.P. 1925.

The Commonwealth presents one issue for our review:

Did the trial court [err] in granting [Appellee's] Motion to Suppress where [Appellee] consulted with his mother prior to police questioning, and where his mother voluntarily brought [Appellee]

_____

[7] The Commonwealth included a certification that suppression "terminates or substantially handicaps the prosecution as required under [Pa.R.A.P.] 311(d)." "In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

to the police station, and where [Appellee] and his mother were both read their Miranda rights, with each indicating that they understood these rights?

Commonwealth's Brief at 5 (capitalization omitted).

In its sole issue on appeal, the Commonwealth argues that the suppression court erred in granting Appellee's Motion to Suppress because the totality of the circumstances shows that Appellee confessed after a knowing, voluntary, and intelligent waiver of his rights in his Mother's presence. Commonwealth's Brief at 12.

"When reviewing the propriety of a suppression order, we are required to determine whether the record supports the factual findings of the suppression court, and we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." In re T.P., 78 A.3d 1166, 1169 (Pa. Super. 2013) (citation omitted). Since the juvenile prevailed below, we consider only the juvenile's evidence and so much of the Commonwealth's evidence that is not contradicted. Id. (citation omitted). We are not bound by the suppression court's legal determinations and our standard of review is de novo. Id. It is well settled that this Court may affirm "on any valid basis appearing of record." Id. at 1170.

"[T]he right against self-incrimination is personal and thus cannot be invoked by another." In re N.M., 141 A.3d 539, 543 (Pa. Super. 2016) (citations omitted). This Court has previously recognized the "innate disadvantages associated with the immaturity of most youth and the need to

balance those considerations against the interests of society and justice." Id. (citation omitted).

We employ a totality of circumstances analysis regarding the waiver of rights by juveniles and the voluntariness of juvenile confessions. Id. at 544 (citation omitted). "Among those factors are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult." Id. (citation omitted). "Other factors to consider in this context also include[:] (1) the duration and means of [the] interrogation; (2) the [juvenile's] physical and psychological state; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) any and all other factors that could drain [the juvenile's] ability to withstand suggestion and coercion." Id. (citation omitted).

Based on the totality of the circumstances, the suppression court concluded that Appellee did not waive his Miranda rights knowingly, voluntarily, and intelligently. Suppression Court Opinion, dated 3/14/16, at 4-5. Because we are bound by the suppression court's credibility determinations regarding Appellee, we agree that Appellee did not knowingly waive his Miranda rights. In re T.P., 78 A.3d 1166, 1169 (Pa. Super. 2013).

As described above, Lieutenant Caskey quickly recited Miranda warnings to Appellee and did not provide them in writing. Appellee, a juvenile with developmental delays, did not attach any significance to these warnings, aside from his associating them with a familiar television show.

Throughout their time at the police station, Appellee's Mother instructed Appellee to "be brave," "tell the truth," and admit his crimes to Lieutenant Caskey. Appellee did not understand that he could refuse to answer Lieutenant Caskey's questions, leave the station freely, or request an attorney. N.T., 2/17/16, at 47-48, 50, 54-59. Appellee only participated in the interview because "he believed he was forced to be there by his mother and that he was directed to confess." Pa.R.A.P. 1925(a) Opinion, dated 7/1/16, at 4-5. This finding is amply supported by the certified record and the totality of circumstances.

The suppression court afforded Appellee's testimony great weight and found Appellee credible. Insofar as the Commonwealth attempts to undermine various findings by referring to testimony as "self-serving statements" and "bald assertions" unsupported by documentary evidence, see Commonwealth's Brief at 18, such arguments conflict with our standard of review. We are bound by the suppression court's credibility determinations and supported factual findings. In re T.P., 78 A.3d 1166, 1169 (Pa. Super. 2013).

In light of his age, his intellectual challenges, the absence of an interested adult, and his belief that he was "forced to be there by his mother and that he was directed to confess[,]" we conclude that Appellee did not knowingly waive his Miranda rights.

Our careful review of the record supports the suppression court's findings of facts, and we discern no error of law in its sound legal conclusions. Accordingly, we affirm.

Order affirmed.

Judge Bowes, Judge Olson, Judge Ott, and Judge Stabile join this Opinion.

Judge Lazarus files a Dissenting Opinion in which President Judge Gantman, President Judge Emeritus Bender, and Judge Shogan join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2018