**Opinion filed December 30, 2021**



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00388-CR

_____

## RICHARD DEL LEE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR52634**

## O P I N I O N

The jury convicted Richard Del Lee of continuous sexual abuse of a young child or children and assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his conviction in two issues. We affirm.

*Background Facts*

The State charged Appellant by indictment with one count of continuous sexual abuse of a young child or children. The State alleged that Appellant intentionally or knowingly committed "two or more acts of sexual abuse against [K.C.] and [S.M.]" during a period of thirty days or more in duration, when Appellant was seventeen years of age or older and when K.C. and S.M. were younger than fourteen years of age.

Appellant is K.C.'s and S.M.'s step-grandfather. K.C. was sixteen at the time of trial. When she was a young girl, she had visitation with her biological father every other weekend, primarily at Appellant's house. These visitations began when K.C. was four years old and continued until she was eleven years old. She testified that, shortly after she started visiting Appellant's house, Appellant began inappropriately touching her. These acts of inappropriate touching continued nearly every weekend that K.C. visited her biological father. K.C. testified that she stopped going to Appellant's house when she was eleven years old because "[she] was tired of it."

In July of 2018, K.C. went to a party for her younger half-brother. During this party, K.C. noticed that "[S.M.] kind of was acting shy, like closed off." K.C. testified: "I used to act like that all the time, you know, really shy all the time. I just had a feeling that I knew something was happening." K.C. then approached Malissa Minica, her former stepmother, and explained what Appellant had done to her. Minica then asked S.M. if anything had ever occurred at Appellant's house that made her uncomfortable. S.M. explained that Appellant had touched her inappropriately in the computer room in his home. Additionally, S.M. told Minica that Appellant had told her to keep his actions a secret.

S.M. was twelve at the time of trial. S.M. also visited Appellant's house every other weekend growing up. S.M. testified that Appellant inappropriately touched her multiple times during her visits to his house. Appellant first started inappropriately touching S.M. when she was seven years old, and the last incident occurred when she was ten years old.

*Analysis*

In his first issue, Appellant asserts that the trial court erroneously allowed two outcry witnesses to testify without conducting a hearing, outside the presence of the jury, regarding the reliability of those witnesses. Article 38.072 allows the admission of a hearsay statement describing sexual abuse made by a child victim to an outcry witness. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2021). Article 38.072, section 2(b) sets out the requirements for the admission of an outcry witness's testimony. Section 2(b)(2) requires "that the trial court find[], in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." *Id.*; *see Sanchez v. State*, 354 S.W.3d 476, 487–88 (Tex. Crim. App. 2011).

Appellant objected on the basis of hearsay to the testimony of two outcry witnesses: Katherine Shores, a forensic interviewer, and Kyle McCardle, an assistant district attorney in Midland County. Appellant made these hearsay objections when Shores and McCardle were called by the State as witnesses, but prior to their testimony. The trial court overruled the hearsay objections at the time they were made without conducting a hearing outside the presence of the jury. The trial court also granted Appellant's request for a running objection to both witnesses' testimony.

Appellant asserts that, based upon his hearsay objection, the trial court should have conducted a hearing under Article 38.072 to determine whether the outcry statements were reliable. In response, the State contends that Appellant cannot challenge the lack of a hearing because he did not specifically request a hearing. In advancing this argument, the State points out that we made the following statement in *Smith v. State*: "[A] timely hearsay objection at trial gives rise to the requirement that the trial court conduct an Article 38.072, section 2(b)(2) reliability hearing." 131 S.W.3d 928, 932 (Tex. App.—Eastland 2004, pet. ref'd). The State contends that this statement in *Smith* was dictum and that we should adopt a contrary view as reflected in *Cates v. State*, 72 S.W.3d 681, 698 (Tex. App.—Tyler 2001, no pet.) (holding that a defendant waives his opportunity for an outcry witness reliability hearing under Article 38.072 by not specifically asking for one).

In *Smith*, we relied on *Long v. State* for the proposition that a hearsay objection is sufficient to invoke the procedural requirements of Article 38.072, including the requirement for a hearing. *Smith*, 131 S.W.3d at 932 (citing *Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990)). In addition to *Smith*, we have cited *Long* for this proposition in other opinions. *See Carney v. State*, No. 11-15-00249-CR, 2017 WL 4545272, at *1 (Tex. App.—Eastland Oct. 12, 2017, pet. ref'd) (mem. op., not designated for publication); *Evans v. State*, No. 11-13-00296-CR, 2015 WL 1501663, at *5 (Tex. App.—Eastland Mar. 31, 2015, pet. ref'd) (mem. op., not designated for publication) ("A timely hearsay objection at trial gives rise to the requirement that the trial court conduct an Article 38.072 hearing."); *Gonzalez v. State*, No. 11-12-00027-CR, 2014 WL 97295, at *4–5 (Tex. App.—Eastland Jan. 9, 2014, no pet.) (mem. op., not designated for publication); *see also Soto v. State*, No. 11-19-00214-CR, 2021 WL 3235881, at *5 (Tex. App.—Eastland July 30, 2021,

no pet.) (mem. op., not designated for publication) ("Article 38.072, section 2(b) sets out the requirements for the admission of an outcry witness's testimony over a hearsay objection."). Accordingly, we have determined that the preservation question was decided in *Long*—a timely hearsay objection gives rise to the requirement that the trial court conduct an Article 38.072 hearing. *See Evans*, 2015 WL 1501663, at *5; *Gonzalez*, 2014 WL 97295, at *4–5.

We further note that by its express terms, Article 38.072 sets out a statutory exception to the hearsay rule. It sets out the requirements "that must be met before an outcry witness may testify." *Sanchez*, 354 S.W.3d at 484. These requirements include the hearing outside the presence of the jury to determine if the outcry statement is reliable. *Id.* at 484–85.

The State further contends that Appellant's hearsay objections were premature because Appellant objected to the testimony of Shores and McCardle before they answered any questions. In this regard, Appellant made his hearsay objections after the State called Shores and McCardle as witnesses and after they were each sworn as witnesses. The Court of Criminal Appeals addressed the timing of a hearsay objection in *Long*. 800 S.W.2d at 548. The court held that a hearsay objection made before the outcry witness begins to testify is timely to invoke the requirements of Article 38.072. *Id.*; *see Gonzalez*, 2014 WL 97295, at *5. Furthermore, as required by Article 38.072, section 2(b)(1), the State filed a notice of its intent to rely on the statute for the outcry testimony from Shores and McCardle. Thus, Appellant's hearsay objections to the testimony of Shores and McCardle can reasonably be viewed as timely objections under the statute. Accordingly, Appellant's hearsay objections to the outcry testimony from Shores and McCardle were timely.

Because the trial court did not first hold a hearing to determine whether the outcry statements made to Shores and McCardle were reliable, as required by the statute, the trial court erred when it admitted the statements made by K.C. to Shores and by S.M. to McCardle. Having determined that the trial court erred, we must now determine whether the error is reversible under TEX. R. APP. P. 44.2(b), which applies to nonconstitutional errors. *See Campos v. State*, 317 S.W.3d 768, 779 (Tex. App.–Houston [1st Dist.] 2010, pet. ref'd) (the erroneous admission of a hearsay statement constitutes nonconstitutional error). When an appellate court applies Rule 44.2(b), it must disregard a nonconstitutional error unless the error affects the appellant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). An appellate court should not overturn a criminal conviction for nonconstitutional error "if the appellate court, *after examining the record as a whole*, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Id.* (quoting *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001)).

*Duncan v. State* is instructive on the question of whether Appellant suffered harm from the trial court's failure to hold the required reliability hearing. 95 S.W.3d 669 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). In *Duncan*, the First Court of Appeals held that a victim's testimony was sufficiently similar to cure any error in the admission of the outcry witness's testimony. *See id.* at 672. Here, K.C.'s. testimony was similar to that of Shores. K.C. testified that Appellant inappropriately touched her almost every time she visited his house. Shores testified that K.C. told her about two incidents in which Appellant inappropriately touched her. Additionally, K.C. testified about an incident in which Appellant forced her to touch his genitals. Likewise, Shores testified that K.C. told her about this same incident. Moreover, S.M. testified that Appellant inappropriately touched her more than one

6

time.  Similarly, McCardle testified that S.M. told him that Appellant touched her more than three times.

The improper admission of evidence is harmless when the same facts are proven by other properly admitted evidence.  *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999).  Because the same facts related by Shores and McCardle were also addressed in the testimony of K.C. and S.M., the failure of the trial court to conduct a reliability hearing under Article 38.072 was harmless.  We overrule Appellant's first issue.

In Appellant's second issue, he contends that the trial court committed error by advising him not to testify.  Appellant essentially contends that the trial court coerced him into not testifying at trial.  Furthermore, he asserts that the error constituted structural error that is not subject to a harm analysis.

A defendant has a right to testify at his own trial, and such a right is fundamental and personal to the defendant. *Johnson v. State*, 169 S.W.3d 223, 232 (Tex. Crim. App. 2005).  A defendant's right to testify at trial is a fundamental constitutional right.  *Rock v. Arkansas*, 483 U.S. 44, 52–53, 53 n.10 (1987).  It is derived from the Fifth and Sixth Amendments to the United States Constitution, is personal to the defendant, and cannot be waived by counsel. *Id.* at 52–53.  However, a defendant may knowingly and voluntarily waive this right. *See Smith v. State*, 286 S.W.3d 333, 338 n.9 (Tex. Crim. App. 2009) (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)).  Trial counsel bears the primary responsibility to inform a defendant of his right to testify, but the ultimate decision of whether he testifies belongs to the defendant. *Johnson*, 169 S.W.3d at 235.

Appellant's trial counsel originally indicated that Appellant was going to testify in his own defense at the guilt/innocence phase.  He did so by calling

Appellant as a witness. The prosecutor asked to approach the bench, at which time she suggested that Appellant should be admonished about his right to testify. The trial court then excused the jury and began questioning Appellant about his decision to testify.

The trial court initially advised Appellant that he could not be compelled to testify. The trial court further advised Appellant that if he chose not to testify, the jury would be instructed that it could not use his silence against him. After these admonishments, Appellant informed the trial court that he wanted to testify. However, in the span of one page of the reporter's record, Appellant informed the trial court that he was not going to testify. Appellant subsequently indicated that he had not discussed his decision to testify with his trial counsel.[1] The trial court offered Appellant the opportunity to visit with his trial counsel about the matter and Appellant accepted this opportunity. After the recess to confer with counsel, Appellant informed the trial court that he would be testifying.

On appeal, Appellant contends that the following exchange influenced his ultimate decision and, therefore, denied him the right to testify:

> THE COURT: But on the other hand, it is your decision to make. And if you feel like that you want this jury to hear from you and think that it would be -- nobody, I suppose, Mr. Lee, knows what's best for you better than you do. You certainly should listen to advice of counsel. Even if your attorney were to say, Mr. Lee, I don't think you ought to testify, you would still be free to testify, you know. On the other hand if he says, I want you to testify and thinks you ought to, that doesn't make any difference. You can still say, I don't want to, I'm not going to.

---

[1] Appellant had previously informed the trial court that he had discussed his decision to testify with his trial counsel.

So you should listen to the advice of counsel, and your counsel may encourage you to testify, he may encourage you not to testify. I don't know. But the fact of the matter is, that decision is yours, not anyone else's.

[APPELLANT]: All right.

THE COURT: And so it's yours to make.

Are you now telling me that after considering the matter you do wish to go ahead and testify?

[APPELLANT]: Well, since you say about counsel, Ed said I shouldn't testify, so I'm going to go with counsel and not testify. That's my final word.

THE COURT: Okay. Mr. Lee, I have talked enough now that I feel like if I said anymore it could be construed as having tried to encourage you one way or the other, and I'm not going to do that.

So are you telling me that your decision not to testify is final?

[APPELLANT]: Final.

The record does not support Appellant's contention that the trial court coerced him into not testifying by following the advice of his counsel. Appellant changed his mind several times regarding his decision to testify or not before ultimately deciding that he would not testify. The above-quoted portion of the reporter's record reflects that the trial court informed Appellant that it was his decision to make—not that of the trial court or Appellant's trial counsel. The tenor of the trial court's questions and remarks, including those indicating that Appellant should listen to the advice of trial counsel,[2] was neither overbearing nor coercive as Appellant suggests. *See Garza v. State*, 248 S.W.3d 742, 744–45 (Tex. App.—Houston [1st Dist.] 2008,

---

[2]As noted above, trial counsel bears the primary responsibility to inform a defendant of his right to testify. *Johnson*, 169 S.W.3d at 235.

no pet.) (addressing warnings given by the trial court to a witness about the perils of testifying).  Accordingly, we overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


December 30, 2021

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.