OPINION BY DUBOW, J.:
*943 The Commonwealth appeals from the March 11, 2016 Order entered by the McKean County Court of Common Pleas granting the Motion to Suppress filed on behalf of juvenile N.B. ("Appellee"). After careful review, we affirm.
Appellee's Mother ("Mother") believed Appellee and his twin brother, D.B., had engaged in sexual misconduct involving a 9-year-old girl who lived in a neighboring apartment. On April 29, 2015, after confronting Appellee and D.B. about her suspicions, Mother reported the allegations to Appellee's school district because she was concerned about Appellee's inappropriate sexual behavior. Lieutenant Steve Caskey of the Bradford Police Department contacted Mother and asked her to bring Appellee and D.B. into the station for an interview.
Mother complied and voluntarily brought 14-year-old Appellee and D.B. to the Bradford Police Department to be interviewed about the sexual misconduct allegations. Upon arriving at the police station, Lieutenant Caskey brought Mother, Appellee, and D.B., into an interview room and turned on recording equipment with Mother's permission.[1] Lieutenant Caskey read Miranda[2] warnings and explained that, while Mother could be present for the interviews, he preferred to interview the boys individually and alone. Mother agreed and Lieutenant Caskey first interviewed Appellee alone.[3]
Appellee fully complied with his Mother's instructions, confessed to numerous sex acts involving the nine-year-old girl, answered all of Lieutenant Caskey's questions, and agreed to speak with Lieutenant Caskey again if necessary. Lieutenant Caskey then questioned D.B. about the allegations, and D.B. similarly complied with his Mother's instructions, confessed to numerous sex acts involving the nine-year-old girl, and answered each of Lieutenant Caskey's questions.[4]
On October 16, 2015, the Commonwealth filed a written allegation of delinquency based on Appellee's confession.[5] On December 1, 2015, Appellee filed a Motion to Suppress his confession.
On February 17, 2016, the suppression court conducted a hearing at which Mother, Lieutenant Caskey, and Appellee testified.
Mother described Appellee's developmental delays and constant difficulties in school. She described the circumstances of her report to police and how she brought Appellee to the police station to confess his crimes. She stated that she repeatedly told *944 Lieutenant Caskey that she wanted to get Appellee the help and treatment he needed, in addition to the consequences for his actions. Mother explained that she did not believe Appellee knew that he could refuse to answer Lieutenant Caskey's questions or leave the police station.
Appellee testified that he was in 7th grade in 2015, that he was "behind" in school, and that he was older than most of his classmates. N.T., 2/17/16, at 48, 68. Appellee described the problems he was having in school, including difficulty paying attention, learning, and understanding his teacher's instructions. Id. at 49. Appellee stated that he was struggling with his math and science classes and not passing.[6] Id. at 72. Appellee also stated that he was receiving mental health treatment in school. Id. at 48. Appellee also testified that, in 2015, he did not know anything about the legal system. Id. at 49.
Appellee explained that he did not understand that he could refuse to answer Lieutenant Caskey's questions or leave the police station. Appellee claimed that he believed he had no choice but to comply with his Mother's instructions and confess his crimes.
Lieutenant Caskey testified about the circumstances of Appellee's confession, including the oral waiver of rights by Appellee, his twin brother, and his Mother. Lieutenant Caskey explained that he recorded the interview with permission, and the Commonwealth introduced the recorded interview.
Lieutenant Caskey "kept a rational, calm demeanor and was forthright with Mother, [Appellee], and [Appellee's] twin brother." Suppression Court Opinion, dated 3/14/16, at 5. Lieutenant Caskey did not yell at or threaten Appellee, and Lieutenant Caskey did not restrain Appellee in any way. Id. Although the door was closed during questioning, it was not locked. Id. at 2. Lieutenant Caskey remained seated during questioning, and Appellee sat in a chair on the other side of Lieutenant Caskey's office desk next to the door. Id. at 2.
At the conclusion of the hearing, the suppression court took the matter under advisement.
On March 14, 2016, the suppression court filed an Order granting Appellee's Motion to Suppress. In its accompanying Opinion, the trial court set forth its findings of fact and conclusions of law, before concluding that, based on the totality of the circumstances, Appellee had not waived his Miranda rights knowingly, voluntarily, and intelligently. Suppression Court Opinion, dated 3/14/16, at 4-5.
On April 8, 2016, the Commonwealth filed a timely appeal.[7] Both the Commonwealth and the suppression court complied with Pa.R.A.P. 1925.
The Commonwealth presents one issue for our review:
Did the trial court [err] in granting [Appellee's] Motion to Suppress where [Appellee] consulted with his mother prior to police questioning, and where his mother voluntarily brought [Appellee] to the police station, and where [Appellee]
*945 and his mother were both read their Miranda rights, with each indicating that they understood these rights?
Commonwealth's Brief at 5 (capitalization omitted).
In its sole issue on appeal, the Commonwealth argues that the suppression court erred in granting Appellee's Motion to Suppress because the totality of the circumstances shows that Appellee confessed after a knowing, voluntary, and intelligent waiver of his rights in his Mother's presence. Commonwealth's Brief at 12.
"When reviewing the propriety of a suppression order, we are required to determine whether the record supports the factual findings of the suppression court, and we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." In re T.P. , 78 A.3d 1166, 1169 (Pa. Super. 2013) (citation omitted). Since the juvenile prevailed below, we consider only the juvenile's evidence and so much of the Commonwealth's evidence that is not contradicted. Id. (citation omitted). We are not bound by the suppression court's legal determinations and our standard of review is de novo. Id. It is well settled that this Court may affirm "on any valid basis appearing of record." Id. at 1170.
"[T]he right against self-incrimination is personal and thus cannot be invoked by another." In re N.M. , 141 A.3d 539, 543 (Pa. Super. 2016) (citations omitted). This Court has previously recognized the "innate disadvantages associated with the immaturity of most youth and the need to balance those considerations against the interests of society and justice." Id. (citation omitted).
We employ a totality of circumstances analysis regarding the waiver of rights by juveniles and the voluntariness of juvenile confessions. Id. at 544 (citation omitted). "Among those factors are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult." Id. (citation omitted). "Other factors to consider in this context also include[:] (1) the duration and means of [the] interrogation; (2) the [juvenile's] physical and psychological state; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) any and all other factors that could drain [the juvenile's] ability to withstand suggestion and coercion." Id. (citation omitted).
Based on the totality of the circumstances, the suppression court concluded that Appellee did not waive his Miranda rights knowingly, voluntarily, and intelligently. Suppression Court Opinion, dated 3/14/16, at 4-5. Because we are bound by the suppression court's credibility determinations regarding Appellee, we agree that Appellee did not knowingly waive his Miranda rights. In re T.P. , 78 A.3d 1166, 1169 (Pa. Super. 2013).
As described above, Lieutenant Caskey quickly recited Miranda warnings to Appellee and did not provide them in writing. Appellee, a juvenile with developmental delays, did not attach any significance to these warnings, aside from his associating them with a familiar television show.
Throughout their time at the police station, Appellee's Mother instructed Appellee to "be brave," "tell the truth," and admit his crimes to Lieutenant Caskey. Appellee did not understand that he could refuse to answer Lieutenant Caskey's questions, leave the station freely, or request an attorney. N.T., 2/17/16, at 47-48, 50, 54-59. Appellee only participated in the interview because "he believed he was forced to be there by his mother and that he was directed to confess." Pa.R.A.P. 1925(a) Opinion, dated 7/1/16, at 4-5. This *946 finding is amply supported by the certified record and the totality of circumstances.
The suppression court afforded Appellee's testimony great weight and found Appellee credible. Insofar as the Commonwealth attempts to undermine various findings by referring to testimony as "self-serving statements" and "bald assertions" unsupported by documentary evidence, see Commonwealth's Brief at 18, such arguments conflict with our standard of review. We are bound by the suppression court's credibility determinations and supported factual findings. In re T.P. , 78 A.3d 1166, 1169 (Pa. Super. 2013).
In light of his age, his intellectual challenges, the absence of an interested adult, and his belief that he was "forced to be there by his mother and that he was directed to confess[,]" we conclude that Appellee did not knowingly waive his Miranda rights.
Our careful review of the record supports the suppression court's findings of facts, and we discern no error of law in its sound legal conclusions. Accordingly, we affirm.
Order affirmed.
Judge Bowes, Judge Olson, Judge Ott, and Judge Stabile join this Opinion.
Judge Lazarus files a Dissenting Opinion in which President Judge Gantman, President Judge Emeritus Bender, and Judge Shogan join.
DISSENTING OPINION BY LAZARUS, J.:
I respectfully dissent because I do not believe the record supports the Majority's determination that Appellee was incapable of attaching meaningful significance to his Miranda warnings. Furthermore, I disagree with the Majority's determination that Mother, in light of her directive that Appellee tell the truth to law enforcement, was not an "interested adult." Lastly, I disagree that said directive constituted state action or was dispositive in determining whether Appellee's Miranda waiver was voluntary.
With regard to a juvenile waiving his Miranda rights, I preliminarily note, "[r]egardless of whether a waiver of Miranda is voluntary, the Commonwealth must prove by a preponderance of the evidence that the waiver is also knowing and intelligent." In re V.C. , 66 A.3d 341, 351 (Pa. Super. 2013), quoting Commonwealth v. Knox , 50 A.3d 732, 746-47 (Pa. Super. 2012) (emphasis in original). For a juvenile to waive the effectuation of the rights contained in a Miranda warning, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Id. Additionally, a juvenile must waive the right with a full awareness both of the nature of the right he abandons and the consequences of the decision to abandon it. Id. "Only if the totality of the circumstances surrounding the interrogation reveals both an un-coerced choice and the requisite level of comprehension may a court properly conclude that a juvenile has waived his Miranda rights." Id. , quoting Knox , 50 A.3d at 746-47.
Instantly, my review of the record and subsequent application of the totality of the circumstances test supports the following determinations: (1) Mother, at the time of Appellee's interrogation, was an "interested adult" with Appellee's interests and welfare at heart; (2) the Commonwealth established its burden of showing Appellee voluntarily, knowingly and intelligently waived his Miranda rights; and (3) Mother's directive that Appellee tell the truth to law enforcement does not constitute state action implicating Miranda.
*947 First, the totality of circumstances test, as it relates to a valid Miranda waiver for a juvenile, requires us to consider, among other factors, Appellee's "youth, experience, comprehension, and the presence or absence of an interested adult." In re N.M. , 141 A.3d 539, 544 (Pa. Super. 2016) (emphasis added).[1] "An interested adult has been defined by our Supreme Court as 'one who is genuinely interested in the welfare of the accused juvenile ... and who has been informed and is aware of those [F]ifth and [S]ixth [A]mendment rights guaranteed to the juvenile.' " Commonwealth v. Satchell , 306 Pa.Super. 364, 452 A.2d 768, 770 (1982). A parent, for purposes of waiving a juvenile's Miranda rights, may act as an interested adult even where the parent is upset and/or distressed at the prospect that his or her child participated in a serious crime. See In re V.C. , 66 A.3d 341, 352 (Pa. Super. 2013).
Here, Mother was present for the reading of Appellee's Miranda rights and preliminary questioning prior to Appellee's approximately ten-to-twenty-minute one-on-one interview with Lieutenant Caskey. During Appellee's suppression hearing, Mother testified as follows:
COMMONWEALTH: Okay. Do you recall whether or not you were read the Miranda [w]arnings with you and both boys present?
MOTHER: Yes, we were.
Q: At some point, were you asked to step out of the office?
A: Yes.
Q: In other words, did Lieutenant Caskey ask to speak to the boys individually?
A: Yes.
Q: Were you okay with that in stepping out of the office. Were you agreeable with that?
A: Yes.
Q: Did you understand that you had a right to be in there if you wanted to? Was that explained to you by Lieutenant Caskey?
A: Yes.
Q: And do you recall approximately how long ... the boys spoke with Lieutenant Caskey?
A: Ten, fifteen minutes.
Q: Okay. And where were you at [sic] when ... they were being questioned just outside of that door?
A: Just outside the office.
Q: And just so we[ ] [are] clear, was that door ever locked or was it open[?]
A: It was closed[.]
Q: But it was[ ] [not] locked to your knowledge?
A: No.
N.T. Suppression Hearing, 2/17/16, at 85-86 (emphasis added).
As the foregoing exchange indicates, Mother understood Appellee's Miranda rights and her right to be present during Appellee's interview. Satchell , supra. Additionally, Mother's decision to report Appellee's behavior to school officials and law enforcement, coupled with her directive that Appellee tell the truth, is as indicative of concern as it is of disinterest.[2]
*948 In re V.C. , supra ; Cf. Commonwealth v. Laudenberger , 715 A.2d 1156, 1159 (Pa. Super. 1998) (juvenile validly waived his Miranda rights, even if mother who met with juvenile prior to waiver was angry with juvenile and only met with juvenile for a few minutes; fact that mother was angry was as indicative of concern as it was of disinterest).
In my opinion, the totality of the circumstances weighs in favor of finding that Mother was an "interested adult." The Majority's conclusion does not comport with relevant case law defining who is an "interested adult" for purposes of juvenile interrogations. There is no requirement, as the Majority implies, that an interested adult vigorously persuade a juvenile to exercise the protections afforded by the Fifth and Sixth Amendments.
Second, I believe that the Commonwealth met its burden of establishing that Appellee knowingly, voluntarily and intelligently waived his Miranda rights, even in light of his alleged intellectual challenges.
"[I]t is the Commonwealth's burden to establish whether a defendant knowingly and voluntarily waived his Miranda rights." Commonwealth v. Cohen , 53 A.3d 882, 885-86 (Pa. Super. 2012) (brackets and citations omitted). "In order to do so, the Commonwealth must demonstrate that the proper warnings were given, and that the accused manifested an understanding of these warnings." Id. at 886.
Appellee's interview took place at a police station inside of an office. Lieutenant Caskey, who was wearing a police uniform, maintained a rational, calm demeanor during the duration of the interview; he did not yell at or threaten Appellee. Trial Court Opinion, 3/14/16, at 2-3. Prior to Appellee's interview, Lieutenant Caskey read Miranda warnings to him, his brother and Mother; all three verbally assented to answering Lieutenant Caskey's questions. Lieutenant Caskey explained to Mother, in the presence of Appellee, her right to be present during the interview, but that he preferred to interview Appellee alone.[3] Lieutenant Caskey also informed Mother that the interview could result in the Commonwealth bringing charges against Appellee. Mother had many opportunities to confer with Appellee before his one-on-one interview with Lieutenant Caskey, *949 and Lieutenant Caskey did not bar her from returning to the office at any time. Lieutenant Caskey did not lock the office door. Appellee, at no point during his individual interview, asked to end the interview or to confer with his Mother or an attorney.
Additionally, there was no indication from Appellee or Mother that he was not aware of his surroundings or that he did not understand what was occurring. Appellee, who was fourteen years of age at the time of the interview, had a normal physical appearance and was responsive to Lieutenant Caskey during the interview. Appellee did not appear to be under the influence of any substance that would alter his responses or otherwise inhibit his understanding of the situation. Furthermore, Mother never raised a concern regarding Appellee's alleged intellectual challenges and/or developmental delay.[4]
At Appellee's suppression hearing, he and Mother testified that his intellectual challenges prevented him from knowingly and voluntarily waiving his Miranda rights. However, the only evidence in the record suggesting Appellee suffers intellectual challenges is said testimony. Appellee did not present documentation that he had an Individualized Education Plan ("IEP") at school, testimony from an expert that had evaluated Appellee (e.g., school counselor, psychiatrist, etc.), documentation evidencing a formal diagnosis of developmental delay or other clinical diagnoses, and/or any other evidence establishing that Appellee is intellectual challenged. In fact, when asked about the subject at Appellee's suppression hearing, Mother conceded that Appellee had not been formally diagnosed with any intellectual or psychological impairments:
COMMONWEALTH: Does [Appellee] have any issues you are aware of in terms of learning, mental health issues, anything of that nature?
MOTHER: Yes.
COMMONWEALTH: [W]hat kind of issues does [Appellee] have in terms of learning?
MOTHER: I would[ ] [not] know the exact terms for them. He[ ] [is] still in the process of evaluations and being diagnosed , and he's just always-he's always struggled. He's basically been behind.
N.T. Suppression Hearing, 2/17/16, at 20 (emphasis added). Instantly, the only evidence of record that Appellee suffers intellectual challenges that render him incapable of understanding his Miranda rights is his and Mother's testimony.
Assuming Appellee is in fact "intellectually challenged," the Majority takes the position, which is unsupported by the record, that such challenges are determinative of an unknowing waiver of his Miranda rights. The majority's determination is inconsistent with our Supreme Court's refusal to adopt a per se rule of inability to waive constitutional rights based solely on mental and physical deficiency.
*950 Commonwealth v. Johnson , 467 Pa. 146, 354 A.2d 886 (1976). Specifically, the majority ignores that even a person of below average mental ability may knowingly and intelligently waive a constitutional right. Commonwealth v. Abrams , 443 Pa. 295, 278 A.2d 902, 905 (1971). Rather, the Majority adopts a post hoc determination that Appellee's waiver of his Miranda rights, relinquished in the presence of an interested adult, was somehow unknowing. I disagree.
Lastly, the trial court stated that the factor that weighed most heavily in determining that suppression was necessary was Appellee's "own testimony that he believed he was forced to be there by his mother and that he was directed to confess." Trial Court Opinion, 6/1/16, at 4-5. In fact, the trial court "found this factor to be the one that skewed the totality of the circumstances in favor of suppression." However, the fact that Mother encouraged Appellee to confess is of no consequence, as Mother's plea that Appellee tell the truth did not constitute state action.
Under relatively rare circumstances, the actions of private citizens may be impliedly ratified with the authority of the state. See Commonwealth v. Eshelman , 477 Pa. 93, 383 A.2d 838 (1978). Even so, the mere use by police and/or prosecutors of the results of an individual's actions does not per se serve to "ratify" those actions as conduct of the state. The test by which we determine whether an action was "under the color" of state law is well settled:
First, the deprivation must be caused by the exercise of some right or privilege created by the state[.] ... Second, the party charged with deprivation must be a person who may fairly be said to be a state actor. This may be because ... his conduct is otherwise chargeable to the state.
Commonwealth v. Corley , 507 Pa. 540, 491 A.2d 829, 832 (1985), quoting Lugar v. Edmondson Oil Co., Inc. , 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). A critical factor in determining whether an individual is acting under the color of state law is whether "in light of all the circumstances of the case, [the private individual] must be regarded as having acted as an 'instrument' or agent of the state." Corley , 491 A.2d at 832, quoting Coolidge v. New Hampshire , 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
Mother, acting as an interested adult, sought to counsel her son in the utility of honesty and justice. There is no indication in the record that her decision to do so was compelled, coopted or ratified by a state actor (e.g., Lieutenant Caskey). Accordingly, where, as here, Mother simply encouraged Appellee to "tell the truth," we may not implicate the constitutional protections that ordinarily attach when an individual is interrogated by a law enforcement officer or other state actor.[5] In fact, Mother stated that it was only after Appellee's interview with Lieutenant Caskey and the subsequent filing of charges that she reconsidered her decision to allow Appellee to cooperate with the authorities. Mother's hindsight in no way diminishes that she initially sought to cooperate with authorities in order to further the interests and welfare of Appellee.
*951 In light of the foregoing, I would reverse the order suppressing Appellee's statement.
President Judge Gantman, President Judge Emeritus Bender, and Judge Shogan join this Dissenting Opinion.

The video recording showed that Lieutenant Caskey's interview with Appellee, Appellee's Mother, and D.B lasted a total of 27 minutes. Suppression Court Opinion, dated 3/14/16, at 3. Lieutenant Caskey's individual questioning of Appellee lasted approximately ten minutes. Id.

Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

When exiting the interview room to permit individual questioning of Appellee, the video recording shows that Mother put her hand on Appellee's head and instructed Appellee to "[b]e brave and you tell the truth, ok?"

Mother then spoke with Lieutenant Caskey before leaving. Mother expressed her request for guidance, her wish to inform the victim's parents, and her desire for "consequences" and "help." When Mother asked what usually happens "with things like this[,]" Lieutenant Caskey replied that "a lot of the times its probation... in school probation.... Obviously they'll get counseling, uh, and that's generally the most part of it."

The Commonwealth also filed a written allegation of delinquency against D.B. based on his confession. D.B.'s case proceeded separately from Appellee's case.

Appellee's Mother testified that Appellee had an Individualized Education Plan, though she could not remember the exact dates. Id. at 70.

The Commonwealth included a certification that suppression "terminates or substantially handicaps the prosecution as required under [Pa.R.A.P.] 311(d)." "In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

We acknowledge, however, that "the per se requirement of the presence of an interested adult during a police interview of a juvenile is no longer required." Knox , 50 A.3d at 746-47 (citation omitted). The presence of an interested adult during an interview is simply one factor in determining the voluntariness of a juvenile's waiver of his Miranda rights. Id.

At Appellee's suppression hearing, counsel argued that Mother could not be an interested adult because she was the reporting source of Appellee's alleged crimes. I disagree.
One of the stated goals of the Juvenile Act is to provide for the care, protection, and wholesome mental development of children. In re J.B. , 39 A.3d 421, 426-27 (Pa. Super. 2012). Additionally, the purpose of juvenile delinquency proceedings is to seek treatment, reformation and rehabilitation, and not to punish. Id. Upon learning that a "sexual incident" occurred between Appellee and the alleged victim, Mother contacted school officials "seek[ing] some kind of guidance" regarding how to handle Appellee's behavior. N.T. Suppression Hearing, 2/17/16, at 10.
In reporting Appellee's behavior to his school, Mother was simply contemplating the best interests and welfare of her son. Satchell , supra ; In re V.C., supra. Her intent was clearly distinct from that of a reporting parent or familial adult who was the victim of a juvenile's actions. Moreover, Mother "didn't know the details" of Appellee's alleged actions at the time she reported his behavior to his school and she did not provide a statement to police, and thus, did not, or could not, inculpate Appellee to the police. N.T. Suppression Hearing, 2/17/16, at 9. The record clearly indicates that Mother's intent was to explore the means by which she could help Appellee avoid similar conduct in the future, which draws parallels with the goals of the Juvenile Act.

Lieutenant Caskey indicated that, given the nature of the allegations, he "believed that [Appellee] would be more forthcoming without ... the embarrassment of the mother being in the room." N.T. Suppression Hearing, 2/17/16, at 44. Appellee corroborated Lieutenant Caskey's account when he stated at his suppression hearing that he "was embarrassed to talk about [the incident] in front of [his] mother." Id.

The Majority's repeated use of the term "developmental delay" is, apparently, a colloquialism. Establishment of developmental delay, or Global Developmental Delay ("GDD"), requires a formal clinical diagnosis. According to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5"), a diagnosis of GDD "pertains to children who are unable to meet developmental targets in a number of areas of intellectual performance but who are not capable or too young to take part in methodical/standardized evaluations of intellectual functioning. This diagnosis involves reconsideration following a phase of time." Global Developmental Delay DSM-5 315.8 (F88), Helen Okoye, MD, MBA, MS-Epi, https://www.theravive.com/therapedia/global-developmental-delay-dsm%C2%AD--5-315.8-(f88) (last visited 4/11/18).

Even assuming Mother were a state actor, the record does not support a finding that her directive that Appellee "tell the truth" amounts to intimidation, coercion or deception that would invalidate the voluntariness of Appellee's confession. Knox , supra. Simply encouraging a juvenile to tell the truth comports with the basic purpose of conducting an interview, and truthfulness is a fundamental tenet of the juvenile justice system. A full understanding of the underlying facts of a particular case is integral to treating and rehabilitating a juvenile. In re J.B. , supra.