J-A11004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.T.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 950 MDA 2018 |

Appeal from the Dispositional Order Entered May 29, 2018
In the Court of Common Pleas of Dauphin County Juvenile Division at
No(s):  CP-22-JV-0000109-2018

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 01, 2019**

T.T.C. appeals from the dispositional order entered after the juvenile court adjudicated him delinquent for theft by receiving stolen property and providing false identification to the police.  Specifically, Appellant challenges the sufficiency of the evidence to sustain the providing-false-information adjudication, as well as the denial of his suppression motion.  We vacate the dispositional order, reverse the adjudication for false identification, reverse the suppression order, and remand for further proceedings consistent with this memorandum.

The factual history underlying the case is as follows.  At approximately 7:00 p.m. on February 11, 2018, Jerry McDowell reported his vehicle stolen.  At around 12:30 a.m., Sergeant Jason Reber encountered a car at an intersection, ran the plate, and discovered that it had been reported stolen.  Sergeant Reber followed the vehicle and contacted other police units to

conduct a stop. Ultimately, a high-speed chase ensued, ending when the stolen vehicle crashed and its occupants fled. Appellant was taken into custody when he was found a block away from the scene of the crash. N.T. Adjudication, 5/29/18, at 4, 6-10. Appellant was asked to identify himself, and he initially gave an incorrect last name to the police. N.T. Suppression, 3/13/18, at 10. Police officers eventually were able to contact Appellant's mother, who met them at the central booking center. *Id*. at 11-12. Appellant was then taken to the police station to be interviewed. *Id*. at 12.

At approximately 3:15 a.m., after Appellant was given a short time to speak with his mother, Officer Reber asked Appellant if he wished to speak to him. Appellant said unequivocally that he did not want to talk to Officer Reber. *Id*. at 13. Officer Reber then read Appellant his *Miranda*[1] rights. *Id*. at 13. Officer Reber proceeded to inform Appellant that the other individuals who were in the stolen car were part of other investigations and that it was in Appellant's best interests to cooperate. *Id*. at 14 ("[I]t's in your best interests to cooperate so that way if you are not part of this group, . . . you should tell me that you're not part of this group."). Although acknowledging that he was not permitted to question Appellant further given the invocation of his right to remain silent, Officer Reber noted that Appellant's mother could ask him questions. *Id*. Appellant's mother told Appellant to talk. *Id*. At some point,

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Officer Reber stated that he could not make promises, but that Appellant's cooperation would be viewed favorably in the eyes of the court and the district attorney's office, and that the statements would benefit Appellant. *Id.* at 20.

At 3:21 a.m., approximately six minutes after invoking his right to remain silent, Appellant signed a *Miranda* waiver in the presence of his mother and sister. *Id.* at 14-16. Appellant then gave Officer Reber details of how he had been picked up between 5:30 and 6:00 p.m. after contacting an acquaintance for a ride home, but they ended up going to a party instead. N.T. Adjudication, 5/29/18, at 13-14. They left the party when a fight broke out, and had a conversation about the stolen nature of the vehicle when they became nervous upon seeing Officer Reber's vehicle behind them. *Id*. at 14-15.

The Commonwealth filed a delinquency petition on February 20, 2018, alleging that Appellant intentionally received stolen property and furnished law enforcement authorities with false identification. Appellant filed a suppression motion alleging that his statement to police after he invoked his *Miranda* rights was unconstitutionally obtained. The juvenile court denied the suppression motion after a hearing. At a subsequent hearing, Appellant was adjudicated delinquent on the charges of theft by receiving stolen property and false identification to law enforcement officers. The juvenile court entered its disposition order, Appellant filed a timely notice of appeal, and both Appellant and the juvenile court complied with Pa.R.A.P. 1925.

3

Appellant presents two issues on appeal:

I.    Did not the court err in denying [Appellant's] motion to suppress his statement to the police when he expressly invoked his right to remain silent before making the statement and when the police failed to scrupulously honor the right?

II.    Was not the evidence insufficient to sustain a conviction for the offense of false identification to law enforcement authorities?

Appellant's brief at 5 (unnecessary capitalization omitted).

We first consider Appellant's challenge to the sufficiency of the evidence to support his adjudication for false identification.  Our standard of review is as follows.

> When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.
>
> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

*In the Interest of J.G.*, 145 A.3d 1179, 1188 (Pa.Super. 2016) (citations omitted).

One commits providing false identification to police officers if he "furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is

4

the subject of an official investigation of a violation of law." 18 Pa.C.S. § 4914. That a reasonable person would know, based upon the circumstances, that he or she was the subject of an official investigation is **not** sufficient to establish a violation of the statute. Rather, "the Commonwealth must prove that the individual was **told** by police that he or she was under investigation, and that must occur prior to the individual's presentment of false identity information." *Commonwealth v. Kitchen*, 181 A.3d 337, 345 (Pa.Super. 2018) (*en banc*) (emphasis in original).

Based upon *Kitchen*, the juvenile court conceded that the evidence was insufficient to sustain Appellant's adjudication for false identification. Juvenile Court Opinion, 12/21/18, at unnumbered 6-7. We agree. The Commonwealth offered no evidence at the adjudicatory hearing to establish that Appellant was **told** by police that he was the subject of an official investigation of a violation of law before Appellant gave a false name.

We are not persuaded by the Commonwealth's attempts to distinguish *Kitchen*.[2] The Commonwealth contends that "the defendant in *Kitchen* was

_____

[2] In making its argument, the Commonwealth cites and discusses an unpublished, non-precedential decision of this Court. *See* Commonwealth's brief at 7-8. By so doing, the Commonwealth violated the then-applicable Superior Court operating procedures which prohibited citation to an unpublished memorandum decision. *See* Superior Court I.O.P. § 65.37 (effective until April 16, 2019). While the rule has been amended to allow citation to non-precedential memorandum decisions filed after May 1, 2019, the memorandum cited by the Commonwealth was filed in December 2018. Accordingly, we shall not consider it.

approached and asked for his identification by law enforcement officers, but was unaware at that point why the police were questioning him." Commonwealth's brief at 8. By contrast, the Commonwealth argues, Appellant was fleeing from the scene of a crash after being pursued by police when he was taken into custody, and taken to the booking station before giving false identification. *Id*. at 8-9. The Commonwealth misstates the facts of both cases.

In *Kitchen*, the defendant, a woman, was the subject of an investigatory detention at the time she gave false identification to a police officer who had effectuated a traffic stop by activating his vehicle's lights and siren. *See Kitchen*, *supra* at 338. Hence, she was not merely "approached" and asked for identification.

In the instant case, the Commonwealth's evidence established that Officer Reber heard via radio transmission that one of the occupants of the stolen vehicle had been taken into custody near the scene of the crash. N.T. Adjudication, 5/29/18, at 9-10. Officer Reber was the only witness presented by the Commonwealth concerning Appellant's false identification, and his testimony was as follows:

Q.  Do you know who the individual was that was taken into custody?

A.  Yes. That was [Appellant].

Q.  And did [Appellant] comply when he was first --

A.     He complied when he was taken into custody.  He did not provide the right identification.

Q.     Was he asked his identification?

A.     Yes.

Q.     At this point in time you said when he was being taken into custody was he just not speaking, was he handcuffed, what was the circumstances?

A.     He wasn't speaking.  We just wanted to get his identification and get his parents['] information so that way we can start the process with juveniles, getting ahold of the parent and then, you know, we have to allow them quiet time and things of that nature.  **So he wasn't spoken to other than to try to get his identity**.

Q.     Was he restrained at this time in any way?

A.     Yeah, he was handcuffed at this time, yes.

Q.     And you said he didn't give the correct -- he complied but didn't give the correct -- what information did he provide?

A.     He provided the name of [T.J.] and a date of birth [in May 2003].

Q.     What is his actual I.D.?

A.     His actual I.D. is [T.C.C.] and the date of birth [is the same as the one he provided].

Q.     And when he gave this information it was to uniformed officers?

A.     Yes.

Q.     And what happened after he was handcuffed and gave this information?

A.     What was I doing?  At this point I told my officers to just observe him while I continue to base to do the rest of the

investigation in regards to contacting a tow truck for an impound. Harrisburg City was there so they were doing the crash investigation. I was essentially organizing and handling the investigation. So I didn't directly talk to him.

Q. Did you eventually or ever get to talk to [Appellant]?

A. Yes. So I had [two patrolmen] and they transported [Appellant] down to the central booking center. We were able to get in touch with [Appellant's] mom . . . . She met us down at the booking center. . . .

*Id*. at 10-12 (emphasis added).

That is a very different sequence of events than the Commonwealth described in its brief. Appellant was handcuffed by police, but "wasn't spoken to other than to try to get his identity" at the time he gave a false name. This happened near the scene of the crash, not at central booking. Indeed, the authorities apparently obtained Appellant's correct information before he got to central booking, as Appellant's mother met them there. As such, the Commonwealth failed to establish that, before he gave false identification, Appellant had been expressly told by someone identified as a police officer that he was the subject of an official investigation. We therefore reverse Appellant's delinquency adjudication as to the 18 Pa.C.S. § 4914 false identification count.

We next consider Appellant's suppression claim mindful of the following. "When reviewing the propriety of a suppression order, we are required to determine whether the record supports the factual findings of the suppression court, and we are bound by those facts and may reverse only if the legal

conclusions drawn therefrom are in error." *In the Interest of N.B.*, 187 A.3d 941, 945 (Pa.Super. 2018) (*en banc*) (internal quotation marks omitted). As the Commonwealth prevailed below, we "may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *In re B.T.*, 82 A.3d 431, 435 (Pa.Super. 2013). However, we are not bound by the juvenile court's legal conclusions, which we review *de novo*. *N.B.*, *supra* at 945.

Appellant's suppression claim alleges violation of his *Miranda* rights. The following legal principles govern.

> To safeguard an uncounseled individual's Fifth Amendment privilege against self-incrimination, suspects subject to custodial interrogation by law enforcement officers must be warned that they have the right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney. Juveniles, as well as adults, are entitled to be apprised of their constitutional rights pursuant to *Miranda*.

*B.T.*, *supra* 436 (cleaned up).

Once a person asserts his or her election to remain silent, the right must be "scrupulously honored" by the authorities. *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). "If an individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease, and any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise."

*Commonwealth v. Frein*, 206 A.3d 1049, 1064 (Pa. 2019) (cleaned up).

Nonetheless,

> Subsequent police questioning after the invocation of a defendant's right to remain silent is not a *per se* violation of that right. Rather, the police may attempt to question a defendant a second time after the defendant's initial invocation of her right to remain silent in order to determine if the defendant wishes to speak further to the police voluntarily, where the police "scrupulously honor" the defendant's initial invocation of the right to remain silent. The question of whether the police have "scrupulously honored" the defendant's right to remain silent focuses on the following considerations: (1) whether the defendant was advised of her **Miranda** rights before both interrogations; (2) whether the officer conducting the first interrogation immediately ceased the questioning when the defendant expressed his desire to remain silent; and (3) whether the second interrogation occurred after a significant time lapse, and whether it was conducted in another location by another officer.

*Commonwealth v. Russell*, 938 A.2d 1082, 1090–91 (Pa.Super. 2007) (cleaned up).

"If a suspect makes a statement during custodial interrogation, the burden is on the Government to show, as a prerequisite to the statement's admissibility in the Government's case in chief, that the defendant voluntarily, knowingly and intelligently waived his rights." *B.T.*, *supra* 436 (cleaned up). In determining whether a juvenile's waiver was valid, we analyze the totality of the circumstances, including,

> the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult. Other factors to consider in this context also include: (1) the duration and means of the interrogation; (2) the juvenile's physical and psychological state; (3) the conditions attendant to the detention; (4) the

10

attitude of the interrogator; and (5) any and all other factors that could drain the juvenile's ability to withstand suggestion and coercion.

*N.B.*, *supra* at 945 (cleaned up).

In the present case, there is no dispute that Appellant invoked his right to remain silent, and that he made a statement during a later custodial interrogation. The question is whether his invocation of that right was scrupulously honored such that his subsequent waiver was knowing, intelligent, and voluntary.

Officer Reber's testimony about the events between Appellant's invocation of his right to remain silent and his waiver of that right is as follows, with grammatical errors intact.

> Q. And what happened [at 3:15 a.m.] after the quiet time [Appellant was given] with his Mother?
>
> A. I had entered the room once I was told they were finished with quiet time. I did enter the room, and I asked [Appellant] if he wanted to speak with me. He said that he did not. So I said okay. I said, well, I'm going to read you your *Miranda* rights. So I read him his *Miranda* rights, and he advised that he understood them, and then I explained that although I cannot ask you any questions, that I'm going to make some statements to you so that you understand what's going on.
>
> So I made some statements basically saying that, you know, this is a bigger part of an investigation. There's multiple investigations going on; that the individuals that you were with in that car are part of several other investigations, and it's in your best interest to cooperate so that way if you are not part of this group, that, you know, you should tell me that you're not part of this group.

So I was basically giving him general statements. I did not ask him any questions or violate his rights.

Q. And what happened?

A. Well, mom was present and I said to mom, I said, well, you know, if mom wants to ask you questions she can. I said I can't ask you questions. I said that several times. And mom said to him, well, I want you to talk. Mom was more the one that convinced him to talk than me. I didn't.

Then after [Appellant] decided, well, he'll speak with me, then that's when I got the actual form, waiver form and read the **Miranda** rights a second time verbatim from the **Miranda** form, and then he signed the form voluntarily that was in front of mom . . . .

Q. Mom was convincing him to talk. What kind of things was she saying?

A. I don't know her exact verbatim, but, you know, she said, you know, I want you to talk. I want you to tell the police what happened, tell them that, you know, because obviously she was concerned that if he's part of -- if he was just this one time around this group of individuals, she doesn't want him to be lumped in with the rest of the group. So, I mean, obviously as a concerned parent, I think that's why she wanted him to speak with me to make sure that he isn't implemented in some other things.

. . . .

Q. And during any time during your interview or prior to the waiver form, did you make any promises?

A. I didn't make any promises. All I said was that I -- actually specifically I said that I cannot make any promises. I said although your cooperation is going to be seen good in the eyes of the Court and in the eyes of the ADA, so, you know, making these statements are going to be benefitting you in regards to not only getting yourself -- or distancing yourself from the individuals that were in the car but it would also

12

> look favorably in the eyes of the Court. That's all I said about that.

N.T. Suppression, 3/13/18, at 13-15, 20.

The juvenile court opined that "upon review of the circumstances as they existed after [Appellant's] initial request to remain silent, wherein his mother then encouraged him to tell the police what he knew, it is apparent that [Appellant] changed his mind and was not enticed to do so by the police." Juvenile Court Opinion, 12/21/18, at unnumbered 6. The juvenile court, noting that credibility determinations are exclusively within its domain, based its determination upon Officer Reber's testimony "that it was at his mother's urging that [Appellant] changed his mind." *Id*. The Commonwealth in its brief relies solely upon the trial court's acceptance of that testimony. *See* Commonwealth's brief at 6.

While it is true that this Court accepts the trial court's credibility determinations, the fact that Officer Reber honestly held the opinion to which he testified concerning Appellant's internal and unexpressed thought processes does not require us to accept it without examination. Rather, as outlined above, our duty is to examine the totality of the circumstances demonstrated by the evidence presented by the Commonwealth at the suppression hearing and to determine whether Officer Reber scrupulously honored Appellant's right to remain silent and Appellant made a knowing, intelligent, and voluntary decision to waive that right. *See also*

*Commonwealth v. Templin*, 795 A.2d 959, 961 (Pa. 2002) ("The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review.").

Our review of the pertinent law under the totality of the circumstances apparent from the record leads us to conclude that Appellant's waiver of his *Miranda* rights was not voluntary. We first note the general circumstances not discussed by the juvenile court or the Commonwealth. At the time of the interrogation, Appellant was fourteen years old. The Commonwealth did not offer evidence concerning Appellant's comprehension abilities or any experience Appellant had with law enforcement. Appellant had been in police custody for approximately two hours before the interrogation began, and was in a transport belt and shackles. *Id*. at 12-13. It was after 3:00 a.m. in the morning.

Appellant's mother was present, but was herself ignorant of the process based upon her own lack of experience. *See* N.T. Suppression, 3/13/18, at 31-32 ("I've never been in trouble. So, therefore, I don't know how that works. I['ve] never been interrogated or anything like that."). Officer Reber had informed Appellant's mother of "the circumstances of what was going on, and also the greater bigger picture of the magnitude of what's behind this investigation" before Appellant was transported to the police station for questioning. *Id*. at 11. Officer Reber indicated that Appellant's mother was "cooperative" and agreed to speak to Appellant. *Id*. Yet, after Appellant spent

14

fifteen minutes alone with his mother, Appellant indicated that he did not wish to speak to Officer Reber. *Id.* at 13.

Despite his refusal to waive his *Miranda* rights, Officer Reber did not terminate his conversation with Appellant. Officer Reber purported to follow the letter of the law in not posing "questions" about the investigation to Appellant, but instead made declaratory statements advising Appellant that it was in his "best interest to cooperate" and explaining why he "should" talk. *Id.* at 14. Although he admitted that he could make no promises, Officer Reber informed Appellant that changing his mind about remaining silent would benefit him, as it would be viewed favorably by the district attorney's office and the court. *Id.* at 20. Officer Reber then encouraged Appellant's mother to speak to Appellant, but did not leave the room or otherwise remove himself from the conversation. *Id.* at 14. Appellant henceforth agreed to talk. The entire, uninterrupted interaction—including the first reading of *Miranda* warnings, Appellant's invocation of the right to remain silent, the advising done by Officer Reber and Appellant's mother at Officer Reber's request, Appellant's agreement to speak, and Appellant's review and signing of a *Miranda* waiver form—took **six minutes**.

From the totality of the above-described circumstances, including the fact that Appellant's private interaction with his mother resulted in his deciding to remain silent, and he decided to waive that right only after Officer Reber advised him that he should, we conclude that the trial court erred in holding

15

that Officer Reber scrupulously honored Appellant's invocation of his *Miranda* rights and that his resultant waiver of those rights was knowing, intelligent, and voluntary. *Compare Commonwealth v. Frein*, 206 A.3d 1049, 1070 (Pa. 2019) (holding court erred in denying motion to suppress statements where the defendant "unambiguously invoked his right to remain silent on multiple occasions," yet the officers continued the conversation with no break); *and Commonwealth v. Henry*, 599 A.2d 1321, 1325 (Pa.Super. 1991) (holding defendant's *Miranda* rights were violated where defendant asserted his right to remain silent, but later confessed, because "from the moment [the officer] initiated the conversation with [the defendant], he was attempting to entice the arrestee to abandon his right to remain silent") (internal quotation marks omitted); *with Commonwealth v. Harris*, 972 A.2d 1196, 1205 (Pa.Super. 2009) (holding *Miranda* rights were scrupulously honored where the defendant declined to speak without counsel present, then said he wanted to think about his decision to do so, was asked twenty-five minutes later if he had enough time to think, and confessed after indicating he was willing to talk without an attorney and executed a *Miranda* waiver form).

We further conclude that the denial of Appellant's suppression motion was not harmless error. To establish the offense of receiving stolen property, the Commonwealth must establish that a person had "possession, control or title" of someone else's property with knowledge that it has been stolen or

belief that it probably has been stolen. 18 Pa.C.S. § 3925. We are not convinced beyond a reasonable doubt that Appellant's statements as to his knowledge did not contribute to the adjudication. *Cf. **Frein***, ***supra*** at 1070-71 (holding refusal to suppress confession was harmless error where properly admitted and uncontradicted evidence of guilt, including evidence that the defendant owned the murder weapon, researched the crime on the internet, and detailed the crime in a notebook in his own handwriting, was so overwhelming that the error could not have contributed to the verdict). Accordingly, we are compelled to vacate Appellant's adjudication for receiving stolen property, reverse the order denying Appellant's suppression motion, and remand for a new adjudicatory hearing.

Dispositional order vacated. Adjudication for false identification reversed. Adjudication for receiving stolen property vacated. Suppression order reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/1/2019

17