J-S56026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FERDINAND MELENDEZ | : | |
| | : | |
| Appellant | : | No. 503 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 10, 2020,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0003664-2019.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED:  MARCH 19, 2021**

Ferdinand Melendez appeals from the judgment of sentence imposing three to six years' incarceration and two years of probation, after convictions on various firearms and drug-trafficking charges.[1]  Melendez claims the police unreasonably searched him.  He also believes there was insufficient proof that he (1) entered a conspiracy and (2) intended to distribute drugs.  We disagree and affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court found Melendez guilty of person prohibited from possessing a firearm, 18 Pa.C.S.A. § 6105(a)(1); possessing a firearm without a license, 18 Pa.C.S.A. § 6106(a)(1); possessing a firearm on the streets of Philadelphia, 18 Pa.C.S.A. § 6108; possession with intent to deliver, 35 P.S. § 780-113(a)(30); criminal conspiracy, 18 Pa.C.S.A. § 903; and possession of a controlled substance, 35 P.S. § 780-113(a)(16).  The trial court acquitted Melendez of possessing an instrument of crime, 18 Pa.C.S.A. § 907(a).

On the morning of February 23, 2019, Melendez rode shotgun in an SUV through the streets of Philadelphia. Stashed in his pants were two bundles of heroin, holding 28 individual packets, and a .45 caliber, loaded handgun. Five more heroin bundles, each with 14 individual packets, were hidden in the glove compartment. All the heroin bundles had clear packets with blue inserts. The driver of the SUV, Mitchell Ramirez, had several jars of marijuana on him.

Around 7:45 a.m., Ramirez stopped their SUV behind another car and honked. The other car drove to the next intersection. Again, Ramirez pulled behind the car and honked, and, again, the car drove to the next intersection. At this third intersection, Ramirez honked and pulled along the side the car.

He gestured for the other driver to lower his window. The driver did so. Ramirez said "they had samples," but they could not currently give him any due to a nearby police car. N.T., 9/16/19, at 7. Ramirez told the other driver to follow them, so the driver did. Eventually, the SUV stopped, and the other driver got in the back seat of the SUV.

Melendez kept "looking around and looking back at" the new occupant. *Id.* at 8. He also looked "in the side-view mirror." *Id.* at 14. Thus, Melendez seemed to be serving as Ramirez's lookout and/or bodyguard. *See id.* at 15. Ramirez gave their guest three complimentary packets of heroin and asked for his phone number to use for future transactions. The guest, however, was an undercover member of the Philadelphia Police Department's narcotics unit, Officer Timothy Bogan.

Suddenly, police surrounded the SUV and arrested the two occupants. Subsequent searches uncovered Melendez's firearm and all of the aforesaid contraband. Melendez moved to suppress the firearm and heroin that the police found on his person. The court of common pleas denied that motion, and the case proceeded to a non-jury trial. The court convicted and sentenced Melendez as described above; this timely appeal followed.

Melendez raises the following issues for our review:

1.  Did not the [trial] court err in [refusing] to suppress the physical evidence as fruit of an unlawful frisk and unlawful arrest . . . ?

2.  Did not the [trial] court err in finding [Melendez] guilty of criminal conspiracy where the evidence was insufficient to prove beyond a reasonable doubt that [he] had agreed to sell narcotics with his alleged co-conspirator . . . ?

3.  Did not the [trial] court err in finding [Melendez] guilty of possession with intent to deliver where the evidence was insufficient to prove beyond a reasonable doubt that [he] (1) constructively possessed the narcotics recovered from the glove compartment . . . and (2) possessed the narcotics recovered from his person with intent to deliver?

Melendez's Brief at 4. We address the first issue and then consolidate the second and third issues for ease of disposition.

For his first issue, Melendez challenges the denial of his motion to suppress the handgun and the 28 packets of heroin that the police discovered on his person, under the Fourth Amendment to the Constitution of the United States and Article I, § 8 of the Constitution of the Commonwealth of

Pennsylvania.[2] Melendez claims the police lacked both a reasonable suspicion to perform a *Terry* frisk[3] and probable cause to arrest him. Thus, he views the physical evidence seized from him as "fruit of the poisonous tree."[4]

The Commonwealth suggests we not concern ourselves with the first half of Melendez's argument regarding the *Terry* frisk, because the officers' actions were permissible as a search incident to a lawful arrest. *See* Commonwealth's Brief at 7. We agree with the Commonwealth and limit our analysis to whether police had probable cause to arrest Melendez.

When reviewing a lower court's denial of a motion to suppress, our scope of review is confined to "the suppression record . . . ." *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013). Furthermore, we ask only "whether the factual findings are supported by [that] record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Brown*, 64 A.3d 1101, 1104 (Pa. Super. 2013) (citations omitted) (internal quotation marks

_____

[2] The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amd. IV. Likewise, the state constitution guarantees that "people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures . . . ." Pa. Const. art. I, § 8. Although he bases his argument on both provisions, Melendez does not claim any heightened protection under the state charter. As a result, we need not perform a separate analysis under *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991).

[3] *See Terry v. Ohio*, 392 U.S. 1 (1968). The suppression upheld the search and seizure as the result of a *Terry* frisk. *See* Trial Court Opinion, 7/2/20, at 4-6.

[4] *See Nardone v. United States*, 308 U.S. 338 (1939).

omitted). The Commonwealth prevailed at the suppression hearing; thus, we "consider only the evidence of the [Commonwealth] and so much of the evidence for the defense as remains uncontradicted when read in the context of the entire record." *Id.* Because the police obtained no search warrant, we review the suppression court's legal conclusions "*de novo*." ***Ornelas v. United States***, 517 U.S. 690, 699, (1996).

"A person is in custody when he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." ***Commonwealth v. Yandamuri***, 159 A.3d 503, 518 (Pa. 2017). Melendez and the Commonwealth agree that the officers who removed Melendez from the SUV arrested him. ***See*** Melendez's Brief at 21. However, they disagree on whether the officers had probable cause to make that arrest.

Probable cause exists if "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." ***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009). We do ***not*** ask whether the officers' beliefs were "correct or more likely true than false." ***Texas v. Brown***, 460 U.S. 730, 742, (1983). Instead, the constitutional question is whether, given the totality of the circumstances, there was a "probability, and not a *prima facie* showing, of criminal activity." ***Illinois v. Gates***, 462 U.S. 213, 235, (1983).

- 5 -

By the time that the back-up officers surrounded the SUV, there was ample probable cause to arrest Melendez for drug-dealing crimes and conspiracy to commit drug-dealing crimes with Ramirez. When the SUV first approached Officer Bogan's unmarked vehicle, Ramirez solicited the deal using plural pronouns, which meant him and Melendez, who was in the car with Ramirez. The suppression court found that Ramirez said, "***We*** had samples." Trial Court Opinion, 7/2/20, at 7 (emphasis added). Moreover, he told Officer Bogan to "follow ***us***." N.T., 9/16/19, at 13 (emphasis added).

Melendez repeatedly attempts to impugn the credibility of Officer Bogan on appeal, by indicating that his use of plural and singular pronouns shifted. ***See*** Melendez's Brief at 6, 8, 22, 26. However, our standard of review for a witness's credibility is ***no review***; the finder of fact has absolute discretion to assess credibility. "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa. Super. 2006). As such, Melendez's attempt to revise the facts in this Court fails. From the start of this illicit transaction, the circumstances indicated to any person of reasonable caution that criminal activity was ongoing and that it involved Ramirez and Melendez, jointly.

Additional probable cause as to Melendez arose once Officer Bogan got in the SUV. Ramirez asked Officer Bogan which drug he would like to sample, while Melendez kept watch. Melendez continually glanced at Officer Bogan in the back seat; at their surroundings; and into the side, rear-view mirror. This

conduct was consistent with someone keeping a lookout for the police or other sources of trouble.

Even so, Melendez criticizes Officer Bogan for failing to explain how he inferred that Melendez was serving as a lookout. **See** Melendez's Brief at 22. This is no real gap in the Commonwealth's evidence. Police training is not needed to tell when someone is looking around for signs of trouble; the officer and the suppression court could reasonably draw that inference based on a rudimentary understanding of human behavior. It was apparent to anyone of reasonable caution that Melendez was probably aiding and abetting the drug deal by keeping watch for Ramirez, so Ramirez could devote his full attention to their potentially new customer.

Based on the facts as the suppression court found them, probable cause existed for the police to arrest Melendez by the time they did so. Thus, the officers' ensuing searches of his person were lawful police actions incident to that arrest. "The search incident to arrest exception allows arresting officers, in order to prevent the arrestee from obtaining a weapon or destroying evidence, to search both the person arrested and the area within his immediate control." **Commonwealth v. Simonson**, 148 A.3d 792, 799 (Pa. Super. 2016) (some punctuation omitted). Therefore, police constitutionally found and seized the handgun and packets of heroin from Melendez's person.

The suppression court's decision not to suppress that physical evidence was correct.[5]

Melendez's second and third issues challenge the sufficiency of the Commonwealth's evidence against him regarding his convictions for the crimes of possession with intent to deliver ("PWID") and conspiracy. The learned Judge Donna M. Woelpper of the Court of Common Pleas of Philadelphia County fully disposed of these claims in her 1925(a) Opinion.

With respect to the PWID charge, she opined as follows:

> [When a court reviews a sufficiency claim,] all evidence is viewed in the light most favorable to the verdict winner to determine whether "there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Antidormi**, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted). The Commonwealth may meet its burden "by means of wholly circumstantial evidence." **Id.** Finally, the reviewing court "may not weigh the evidence and substitute its judgment for the factfinder." **Id.**
>
> To sustain a conviction for PWID, the Commonwealth must prove "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act." 35 P.S. § 780-113(a)(30). Because [Melendez] was not in physical possession of the narcotics recovered from the glove compartment of the car, the Commonwealth [needed] to establish that [Melendez] had constructive possession. **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013). In order to prove constructive possession, the Commonwealth must show that the defendant had

---

[5] The suppression court upheld the search and seizure of that evidence under **Terry**, **supra**, but we may affirm the suppression court's order "on any valid basis appearing of record." **In Interest of N.B.**, 187 A.3d 941, 945 (Pa. Super. 2018).

"conscious dominion" over the contraband. **Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa. Super. 2012) (quoting **Commonwealth v. Parker**, 847 A.2d 745, 750 (Pa. Super. 2004)). In other words, the defendant must have "the power to control the contraband and the intent to exercise that control." **Id.** The "intent to maintain a conscious dominion may be inferred from the totality of the circumstances." **Commonwealth v. Johnson**, 26 A.3d 1078, 1094 (Pa. 2011) (citation omitted). In addition, "constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." **Id.** (citation and brackets omitted).

The intent to deliver element "may be inferred from possession of a large quantity of controlled substances. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver." **Commonwealth v. Roberts**, 133 A.3d 759, 768 (Pa. Super. 2016) (citation omitted). If the quantity of the controlled substance is not determinative, the court may consider other factors:

> Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and the sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

**Id.** (citation omitted).

Here, [Melendez] was the front-seat passenger in the vehicle in which the narcotics were recovered. Although it was the driver who reached forward out of Officer Bogan's view and handed the three packets of heroin to him, [Melendez] was present during the transaction and served as the lookout. Lastly, during their initial interaction, the driver said to Officer Bogan, "We have samples." This evidence is sufficient to support a finding that [Melendez]

constructively possessed the narcotics recovered from the vehicle.

As for the intent to deliver, [Melendez] possessed two bundles containing 28 packets of heroin in his pants. The heroin recovered from [his] person and the vehicle's glove compartment were both contained in clear packets with blue inserts. As stated above, [Melendez] played the role of lookout during the transaction. Finally, [he possessed] a loaded handgun at the time of the transaction and his subsequent arrest. *See Commonwealth v. Ratsamy*, 934 A.2d 1233, 1238 (Pa. 2007) (mentioning as a relevant factor the defendant's possession of a loaded handgun). Overall, this evidence was sufficient to establish that the heroin recovered from [Melendez's] person was intended for distribution and delivery.

Trial Court Opinion, 7/2/20, at 7-8 (some punctuation omitted).

Regarding the criminal conspiracy charge, the trial court stated:

[Melendez's] final issue challenges the sufficiency of the evidence underlying his conviction for criminal conspiracy. He claims that the evidence failed to establish (1) the existence of an agreement between [him] and the driver; and (2) that [he] committed an overt act in furtherance of the alleged conspiracy.

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Rios*, 684 A.2d 1025, 1030 (Pa. 1996), *see also* 18 Pa.C.S.A. § 903. "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000) (citation omitted).

As it is often not possible to prove an explicit or formal agreement between a defendant and his co-conspirator, the agreement may be established by circumstantial evidence, including the relationship between the parties, the conduct or circumstances of the parties, as well as the overt acts of

co-conspirators. ***Commonwealth v. Le***, 208 A.3d 960, 969 (Pa. 2019) (citation omitted). "Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient." ***Commonwealth v. Murphy***, 844 A.2d 1228, 1238 (Pa. 2004) (citation omitted). However, these factors "may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred." ***Commonwealth v. Swerdlow***, 636 A.2d 1173, 1177 (Pa. Super. 1994) (citation omitted).

Here, as previously stated, [Melendez] was seated in the front, passenger seat beside the driver. He was present when the driver summoned Officer Bogan by honking his car horn three times, informed Officer Bogan that they had samples, and throughout the entirety of the transaction. [Melendez] served as the lookout, shifting his gaze from side to side, looking back at Officer Bogan, and in the side-view mirror. Finally, the driver committed several overt acts including honking the car horn, inviting Officer Bogan into the car, handing three packets of heroin to Officer Bogan, and exchanging telephone numbers. Viewing the facts in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to establish the elements of conspiracy.

***Id.*** at 8-9 (some punctuation omitted).

We adopt this well-reasoned analysis as our own and dismiss Melendez's two sufficiency-of-the-evidence claims as meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/19/21

- 11 -